## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

**CAROLYN PLACHT, on behalf of the Symbria Inc. Employee Stock Ownership Plan and on behalf of a class of all other persons similarly situated,**

               **Plaintiff,**

**v.**

**ARGENT TRUST COMPANY,**
**JILL KRUEGER,**
**THOMAS NOESEN, JR.,**
**JOHN R. CALLEN,**
**CENTRAL BAPTIST VILLAGE,**
**COVENANT RETIREMENT COMMUNITIES, INC.,**
**FRANCISCAN SISTERS OF CHICAGO SERVICE CORPORATION,**
**LIFELINK CORPORATION,**
**LUTHERAN HOME AND SERVICES FOR THE AGED, INC.,**
**MATHER LIFEWAYS,**
**NORWEGIAN LUTHERAN BETHESDA HOME ASSOCIATION,**
**NORWOOD LIFE CARE FOUNDATION,**
**FRIENDSHIP SENIOR OPTIONS, NFP,**
**REST HAVEN ILLIANA CHRISTIAN CONVALESCENT HOME,**
**ST. PAUL'S HOUSE & HEALTHCARE CENTER, and**
**UNITED METHODIST HOMES & SERVICES,**

               **Defendants.**

**Case No.**

## COMPLAINT

     Plaintiff Carolyn Placht, by her undersigned attorneys, on behalf of the Symbria Inc.

Employee Stock Ownership Plan, and similarly situated participants in the Plan and their

beneficiaries, alleges upon personal knowledge, the investigation of her counsel, and upon information and belief as to all other matters, as to which allegations she believes substantial evidentiary support will exist after a reasonable opportunity for further investigation and discovery, as follows:

## **BACKGROUND**

1.      Plaintiff Carolyn Placht ("Plaintiff") brings this suit against Argent Trust Company ("Argent"), the trustee for the Symbria Inc. Employee Stock Ownership Plan (the "Plan") when the Plan acquired shares of Symbria, Inc. ("Symbria") in an October 31, 2015 transaction; and selling shareholders Jill Krueger, Thomas Noesen, Jr., John R. Callen, Central Baptist Village, Covenant Retirement Communities, Inc., Franciscan Sisters of Chicago Service Corporation, LifeLink Corporation, Lutheran Home and Services for the Aged, Inc., Mather Lifeways, Norwegian Lutheran Bethesda Home Association, Norwood Life Care Foundation, Friendship Senior Options, NFP,  Rest Haven Illiana Christian Convalescent Home, St. Pauls House & Healthcare Center, and United Methodist Homes & Services (together, the "Selling Shareholders").

2.      Plaintiff is a participant in the Plan, as defined by ERISA § 3(7), 29 U.S.C. § 1002(7), who was vested in shares of Symbria allocated to her account in the Plan. The Plan is designated as an employee stock ownership plan (ESOP).

3.      This action is brought under Sections 404, 406, 409, 410, and 502(a) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1104, 1106, 1109, 1110, and 1132(a), for losses suffered by the Plan and its participants caused by Argent when it caused the Plan to buy shares of Symbria for more than fair market value, and other relief.

2

4.      As alleged below, the Plan has been injured and its participants have been deprived of hard-earned retirement benefits resulting from Defendants' violations of ERISA.

5.      At all relevant times, Symbria was a privately held company and was the Plan's sponsor. Symbria adopted the Plan effective April 1, 2015. On October 31, 2015, the Selling Shareholders sold, directly or indirectly, 100% of the issued and outstanding shares of Symbria common stock to the Plan and its Trust (the Symbria Inc. Employee Stock Ownership Trust) for $66,500,000, using the proceeds of a Symbria loan guaranteed by Symbria and a loan with the Selling Shareholders that was then assigned to and assumed by Symbria (the stock and loan transactions together, the "ESOP Transaction" or "Transaction"). The term notes payable to Symbria provided for the loans to be repaid over 40 years and bore interest at 2.64%.

6.      As a result of the ESOP Transaction, Symbria became 100% employee owned.

7.      Argent represented the Plan and its participants as Trustee in the ESOP Transaction. It had sole and exclusive authority to negotiate the terms of the ESOP Transaction and to authorize the Transaction on the Plan's behalf.

8.      The ESOP Transaction allowed the Selling Shareholders to unload their interests in Symbria above fair market value, for the reasons explained below, and saddle the Plan with tens of millions of dollars of debt over a 40-year repayment period to finance the Transaction. Argent failed to fulfill its ERISA duties, as Trustee and fiduciary, to the Plan and its participants, including Plaintiff.

9.      The Selling Shareholders are parties in interest who sold shares in the ESOP Transaction. The Selling Shareholders are liable under ERISA for participating in prohibited transactions and the Trustee's breach of fiduciary duty.

10.     Through this action, Plaintiff seeks to enforce her rights under ERISA and the Plan, to recover the losses incurred by the Plan and/or the improper profits realized by Defendants resulting from their causing or knowingly participating in prohibited transactions and breaches of fiduciary duty, and equitable relief, including rescission of the ESOP Transaction and removal of fiduciaries who have failed to protect the Plan. Plaintiff requests that these prohibited transactions be declared void, Defendants be required to restore any losses to the Plan arising from their ERISA violations, Defendants be ordered to disgorge any profits, and any monies recovered for the Plan be allocated to the accounts of the Class members.

## JURISDICTION AND VENUE

11.     This action arises under Title I of ERISA, 29 U.S.C. §§ 1001 *et seq.*, and is brought by Plaintiff under ERISA § 502(a), 29 U.S.C. § 1132(a), to require Argent to make good to the Plan losses resulting from its violations of the provisions of Title I of ERISA, to obtain appropriate equitable relief against Argent and the Selling Shareholders, to restore to the Plan any profits that have been made by breaching fiduciaries and parties in interest through the use of Plan assets, and to obtain other appropriate equitable and legal remedies in order to redress violations and enforce the provisions of ERISA.

12.     This Court has subject matter jurisdiction over this action pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

13.     Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Plan is administered in this District, because some of the events or omissions giving rise to the claims occurred in this District, and because a defendant resides or may be found in this District. The Plan is administered in Warrenville, Illinois.

## PARTIES

14.    Plaintiff Carolyn Placht is and has been a Plan participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), since the adoption of the Plan effective on April 1, 2015. Plaintiff resides in St. Louis, Missouri. She was a Certified Occupational Therapy Assistant at Symbria. She was employed there from March 2007 to June 2021. She was vested in shares of Symbria in her Plan account.

15.    Defendant Argent operates as an investment management firm and offers financial planning, trusts, and real estate management services to families and organizations. Argent's principal place of business is 1100 Abernathy Road, 500 Northpark, Suite 550, Atlanta, Georgia 30328. Argent is a division of Argent Financial Group, an independent wealth management firm. Argent Financial Group is headquartered at 500 E Reynolds Dr., Ruston, Louisiana 71270.

16.    Defendant Argent was the Trustee of the Plan at the time of the ESOP Transaction and continued in that role until in or about 2020, when GreatBanc Trust Company succeeded it as Trustee. Argent was a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because it was the trustee within the meaning of ERISA § 403(a), 29 U.S.C. § 1103(a), and because it exercised discretionary authority or discretionary control respecting management of the Plan, and/or exercised authority or control respecting management or disposition of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan.

17.    As Plan trustee, Argent was a named fiduciary, within the meaning of ERISA § 402(a), 29 U.S.C. § 1102(a), under the terms of the written instruments under which the Plan was established and maintained.

18.     Argent was a party in interest under ERISA § 3(14), 29 U.S.C. § 1002(14), at all times that it was Trustee of the Plan.

19.     Defendant Jill Krueger was at the time of the ESOP Transaction the President and Chief Executive Officer (CEO) of Symbria. She was a selling shareholder in the ESOP Transaction. On information and belief, she resides or may be found in Naperville, Illinois in this District.

20.     Defendant Thomas Noesen, Jr. was at the time of the ESOP Transaction the Chief Financial Officer (CFO) of Symbria. He was a selling shareholder in the ESOP Transaction. On information and belief, he resides or may be found in this District.

21.     Defendant John R. Callen was at the time of the ESOP Transaction the President of Alliance Rehab, Inc., a subsidiary of Symbria. He was a selling shareholder in the ESOP Transaction. On information and belief, he resides or may be found in Lake County, Illinois in this District.

22.     Defendant Central Baptist Village was a selling shareholder in the ESOP Transaction. Its principal place of business is in Norridge, Illinois in this District.

23.     Defendant Covenant Retirement Communities, Inc. was a selling shareholder in the ESOP Transaction. Its principal place of business is in Skokie, Illinois in this District.

24.     Defendant Franciscan Sisters of Chicago Service Corporation was a selling shareholder in the ESOP Transaction. Its principal place of business is in Homewood, Illinois in this District.

25.     Defendant LifeLink Corporation was a selling shareholder in the ESOP Transaction. Its principal place of business is in Bensenville, Illinois in this District.

6

26.     Defendant Lutheran Home and Services for the Aged, Inc. was a selling shareholder in the ESOP Transaction. Its principal place of business is in Arlington Heights, Illinois in this District.

27.     Defendant Mather Lifeways was a selling shareholder in the ESOP Transaction. Its principal place of business is in Evanston, Illinois in this District.

28.     Defendant Norwegian Lutheran Bethesda Home Association was a selling shareholder in the ESOP Transaction. Its principal place of business is in Chicago, Illinois in this District.

29.     Defendant Norwood Life Care Foundation was a selling shareholder in the ESOP Transaction. Its principal place of business is in Chicago, Illinois in this District.

30.     Defendant Friendship Senior Options, NFP was a selling shareholder in the ESOP Transaction. Its principal place of business is in Schaumburg, Illinois in this District.

31.     Defendant Rest Haven Illiana Christian Convalescent Home was a selling shareholder in the ESOP Transaction. Its principal place of business is in Tinley Park, Illinois in this District.

32.     Defendant St. Pauls House & Healthcare Center was a selling shareholder in the ESOP Transaction. Its principal place of business is in Chicago, Illinois in this District.

33.     Defendant United Methodist Homes & Services was a selling shareholder in the ESOP Transaction. Its principal place of business is in Chicago, Illinois in this District.

## FACTUAL ALLEGATIONS

### Plan Background and the 2015 Stock and Loan Transactions

34.     Symbria bills itself as a leading provider of innovative rehabilitation and wellness programs, pharmacy services, experience surveys, and IT consulting for senior-living and post-

acute providers. Symbria originated with the 1995 founding of Alliance for Health d/b/a Health Resources Alliance, Inc. by twelve nonprofit senior living organizations, which was followed in 1999 by the founding of Midwest SeniorCare Network, Inc. as a for-profit company by the members of Health Resources Alliance. Midwest SeniorCare Network was renamed as Symbria. Symbria is headquartered in Warrenville, Illinois, and its main pharmacy operations center is located in Woodridge, Illinois. It has regional rehab operations locations in eleven states. Prominent wholly-owned Symbria subsidiaries have included Symbria Rehab, Inc. (f/k/a Alliance Rehab, Inc.); Symbria Rx Services, LLC; and Symbria Analytics, LLC. Symbria had more than 2,000 employees at the time of the ESOP Transaction. It is and was at all times a privately held company.

35.     Symbria was incorporated in Illinois on January 20, 1999.

36.     Symbria adopted the Plan with an effective date of April 1, 2015.

37.     Symbria has been located at 28100 Torch Parkway, Warrenville, Illinois 60555 from the effective date of the Plan to the present.

38.     Symbria stock is not readily tradable on an established securities market. There is and was no public market for Symbria stock.

39.     Employees of Symbria, including its subsidiaries, participate in the Plan.

40.     The Plan's Forms 5500 report at Part II Lines 2a & 3a that Symbria is the Plan's sponsor and administrator.

41.     Symbria is and was from the inception of the Plan the sponsor of the Plan within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B).

42.     Symbria is and was the Plan's administrator within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A), from the effective date of the Plan to the present.

43.     Symbria is and was an ERISA fiduciary to the Plan as its administrator.

44.     Symbria is and was at the time of the October 31, 2015, ESOP Transaction a party in interest to the Plan under ERISA § 3(14), 29 U.S.C. § 1002(14).

45.     The Schedules H, Line 4i -Schedule of Assets (Held At End of Year) to the Plan's Forms 5500 Annual Return/Report state that Symbria is a party in interest and fiduciary to the Plan.

46.     The Plan is a pension plan within the meaning of ERISA § 3(2), 29 U.S.C. § 1002(2), and is subject to ERISA pursuant to ERISA § 4(a)(1), 29 U.S.C. § 1003(a)(1).

47.     The Plan is intended to be a leveraged employee stock ownership plan, or "Leveraged ESOP." The Plan was designed to invest primarily in the employer securities of Symbria.

48.     The Plan's principal asset is and has been Symbria stock at all times since the ESOP Transaction.

49.     The Plan is an individual account plan, or defined contribution plan, under which a separate individual account was established for each participant.

50.     Symbria appointed Argent as Trustee of the Plan. As Trustee, Argent had sole and exclusive authority to negotiate and approve the ESOP Transaction on behalf of the Plan, including the price the Plan paid for Symbria stock.

51.     As Trustee for the Plan, it was Argent's exclusive duty to ensure that any transactions between the Plan and the Selling Shareholders and between the Plan and Symbria, directly or indirectly, including acquisitions of Symbria stock by the Plan and loans to the Plan, were fair and reasonable and to ensure that the Plan paid no more than fair market value.

52.     Prior to and at the time of the ESOP Transaction, Symbria's Board of Directors was composed of representatives from its shareholder organizations. On or about October 28, 2015, a meeting of Symbria's Board was held, at which time the Selling Shareholders voted to sell their Symbria shares in the ESOP Transaction.

53.     The Selling Shareholders included twelve business organizations: Central Baptist Village; Covenant Retirement Communities, Inc.; Franciscan Sisters of Chicago Service Corporation; LifeLink Corporation; Lutheran Home and Services for the Aged, Inc.; Mather Lifeways; Norwegian Lutheran Bethesda Home Association (a/k/a Bethesda Home and Retirement Center); Norwood Life Care Foundation; Friendship Senior Options, NFP; Rest Haven Illiana Christian Convalescent Home; St. Pauls House & Healthcare Center; and United Methodist Homes & Services (together, the "Organization Shareholders").

54.     Each of the Organization Shareholders had the right to appoint at least one director to Symbria's Board of Directors. One of the Organization Shareholders owned a greater number of shares in Symbria than the other Organization Shareholders and, therefore, held two "ownership interests." The twelve Organization Shareholders therefore held thirteen of the fourteen "ownership interests" in Symbria, with one Organization Shareholder holding two "ownership interests."

55.     Each of the Organization Shareholders was a party in interest under ERISA § 3(14), 29 U.S.C. § 1002(14), at the time of the ESOP Transaction as a Symbria director or person with powers or responsibilities similar to those of a director.

56.     Plaintiff further alleges that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. One of the Organization Shareholders was also a party in interest under ERISA § 3(14),

29 U.S.C. § 1002(14), at the time of the ESOP Transaction as a 10 percent or more shareholder of Symbria, directly or indirectly.

57.     The Selling Shareholders also included three individuals: Jill Krueger; Thomas Noesen, Jr.; and John R. Callen (together, the "Management Shareholders"). Jill Krueger was the President and CEO of Symbria. Thomas Noesen, Jr. was the CFO of Symbria. John R. Callen was the President of Alliance Rehab/Symbria Rehab, a Symbria subsidiary. Shorty prior to the ESOP Transaction, The Washington and Jane Smith Home sold its Symbria stock to the Management Shareholders. The Management Shareholders therefore together held one of the fourteen "ownership interests" in Symbria.

58.     The Management Shareholders were each officers of Symbria, and/or of a Symbria subsidiary whose employees were covered by the Plan, at the time of the ESOP Transaction. Each of the Management Shareholders was a party in interest under ERISA § 3(14), 29 U.S.C. § 1002(14), at the time of the ESOP Transaction as an officer of Symbria and/or Symbria subsidiary or as a person with powers or responsibilities similar to an officer; and/or as an employee of Symbria or its subsidiary.

59.     Plaintiff further alleges that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. One or more of the Management Shareholders was also a party in interest under ERISA § 3(14), 29 U.S.C. § 1002(14), at the time of the ESOP Transaction as a director of Symbria and/or Symbria subsidiary or as a person with powers or responsibilities similar to a director.

60.     Plaintiff further alleges that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. Symbria's appointment of Argent as Trustee of the Plan was made by the Selling

Shareholders, as directors or persons having powers or responsibilities similar to directors and/or as officers. The Management Shareholders, or an ESOP "Steering Committee" the Management Shareholders controlled, appointed Argent as Trustee, or presented Argent for appointment to the Organization Shareholders or the directors appointed by them. Selling Shareholders exercising discretionary appointment authority were fiduciaries of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because they exercised discretionary authority or discretionary control respecting management of the Plan, and/or had discretionary authority or discretionary responsibility in the administration of the Plan. As fiduciaries, such Selling Shareholders were parties in interest under ERISA § 3(14), 29 U.S.C. § 1002(14).

61.     On October 31, 2015, the Plan and its Trust purchased from the Selling Shareholders, directly or indirectly, 100% of the issued and outstanding shares of Symbria common stock for $66,500,000.

62.     The 1,400 shares of Symbria common stock owned by the Selling Shareholders, representing all of the issued and outstanding shares of Symbria stock, was converted or reissued by Symbria into 1,000,000 shares of Symbria common stock, representing all of the issued and outstanding shares of Symbria stock.

63.     The Plan purchased the Symbria stock with the proceeds of a Symbria loan guaranteed by Symbria. The term note provided for the loan to be repaid over 40 years and bore interest at 2.64%. The Plan's Trust also borrowed from the Selling Shareholders, and such loan was then assigned to Symbria, which assumed its obligations to the Selling Shareholders. The Selling Shareholders received consideration including subordinated promissory notes and warrants issued by Symbria and certain rights.

64.     At the time of the ESOP Transaction, Symbria became 100% employee owned.

65. The Organization Shareholders received consideration in the ESOP Transaction in the form of cash, subordinated interest-bearing notes given by Symbria, and warrants to purchase shares of stock in Symbria in the future. The Management Shareholders received cash and subordinated interest-bearing notes.

66. Note 5 to the Financial Statements to the Plan's Forms 5500 Annual Return/Report reports that the Plan's investment in Symbria common stock is a party-in-interest investment and the notes payable and related interest payable and expense paid by the Plan to Symbria also constitute party-in-interest transactions.

67. The Plan's Forms 5500 were signed by Defendant Noesen in 2016 and Thomas Kiser (Symbria's General Counsel and Chief Compliance Officer) from 2018 to 2021, on behalf of Symbria in its capacity as Plan Administrator and in its capacity as employer or Plan Sponsor, under penalty of perjury.

68. Symbria provided financial projections to Argent for the valuation for the ESOP Transaction. The financial projections were unreasonably optimistic. Symbria failed to meet projected financial metrics after the Transaction.

69. While the Plan had paid $66,500,000 for the reissued 1,000,000 shares of Symbria common stock on October 31, 2015, the stock was revalued at $9,300,000 as of March 31, 2016. In annual valuations as of the March 31st end of the respective Plan Years, the Plan's stock was subsequently revalued as follows: $7,800,000 in 2017; $11,000,000 in 2018; and $10,900,000 in 2019. As of March 31, 2020, the Plan's Symbria stock was revalued at $8,650,000, despite millions of dollars of contributions by Symbria to the Plan over four Plan Years. Plaintiff does not aver that any of these valuations was accurate.

70. Argent relied on Stout Risius Ross, Inc. ("SRR"), an appraiser, as its financial advisor in the ESOP Transaction. However, courts have faulted ESOP trustees for relying on SRR's work in ESOP transactions. *See Brundle v. Wilmington Trust, N.A.*, 919 F.3d 763 (4th Cir. 2019) (affirming $29,773,250 judgment against ESOP trustee).

71. Plaintiff further alleges that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. Argent did not perform due diligence in the course of the ESOP Transaction similar to the due diligence that is performed by third-party buyers in large corporate transactions. Argent's due diligence in the ESOP Transaction was less extensive and thorough than the due diligence performed by third-party buyers in corporate transactions of similar size and complexity. The Plan overpaid for Symbria stock in the ESOP Transaction due to Argent's reliance on unrealistic growth projections, unreliable or out-of-date financials, improper discount rates, inappropriate guideline public companies for comparison, and/or its failure to test assumptions, failure to question or challenge underlying assumptions, and/or other factors that rendered the valuation of Symbria stock in the ESOP Transaction faulty. Due to the Plan's overpayment, the Plan's participants, including Plaintiff, received diminished stock allocations, saw their Plan take on excessive debt to finance the Transaction, and suffered losses to their individual Plan accounts.

72. As Trustee, Argent is subject to liability for a payment by the Plan of more than fair market value for Symbria stock caused by Argent's faulty valuation of Symbria in the ESOP Transaction.

73. While Argent was a discretionary trustee with regard to the ESOP Transaction, it was a directed trustee with regard to the appointment of Symbria directors when the Plan owned

the company after the Transaction. Argent was required to appoint directors selected by Symbria's Nominating Committee, on direction from Symbria's ESOP Committee.

74.     Plaintiff further alleges that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. The Plan paid a control premium for Symbria even though the Plan did not obtain control over the Symbria Board of Directors upon its 2015 purchase of the company. Further, the Plan did not receive a discount for lack of control. The Plan therefore overpaid for Symbria. The Selling Shareholders retained control of the Board as a result of warrants received in exchange for their Symbria shares and other Transaction and/or corporate documents and as a result of the Management Shareholders' continuing authority as Symbria officers, including its CEO, CFO, and President of Alliance Rehab/Symbria Rehab.

75.     The ESOP Transaction allowed the Selling Shareholders to overcharge the Plan for the purchase of their Symbria stock and to enjoy certain tax advantages by selling to an ESOP rather than to a non-ESOP buyer. The Management Shareholders benefitted from the consideration they received after flipping to the ESOP the stock they obtained shortly before the Transaction from The Washington and Jane Smith Home. The Management Shareholders profited because a Deferred Compensation Liability Amount under Symbria's deferred compensation plan became due and payable to them as a result of the ESOP Transaction, and further, an Equity Incentive Plan Amount under Symbria's equity incentive plans became due and payable to them as a result of the ESOP Transaction. On information and belief, the Management Shareholders also would profit from stock appreciation rights (SARs) in a new executive incentive plan post-Transaction. The Management Shareholders reaped millions of dollars due to the ESOP Transaction.

76.     Symbria's owners initiated a Transaction that was primarily for their own benefit, and Defendant Krueger noted that "they can use the money that they get from the sale to further invest in their future." The imprudent and ERISA-prohibited stock purchase and loans that Argent caused the Plan to enter into primarily benefited the Selling Shareholders, and particularly the Management Shareholders, and not the Plan participants and beneficiaries who were shortchanged.

77.     Argent is liable to the Plan for the difference between the price paid by the Plan and the fair market value of Symbria shares at the time of the ESOP Transaction.

### The Trustee's Indemnification Agreement

78.     Pursuant to Argent's engagement agreement, Symbria, when it was owned by the Selling Shareholders, agreed to indemnify Argent as Plan Trustee in connection with the ESOP Transaction. The indemnification agreement is something of value, potentially worth millions of dollars of defense costs and/or liability in ERISA private company ESOP litigation.

79.     Plaintiff further alleges that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. The indemnification agreement does not contain an exemption addressing violation of the *per se* prohibited transaction rules under ERISA § 406. The indemnification agreement does not require payment of interest or otherwise account for the time value of money should Argent ultimately be required to reimburse Symbria.

80.     The indemnification agreement is invalid under ERISA § 410(a), 29 U.S.C. § 1110(a), as against public policy because Argent violated its ERISA duties to the Plan, and its legal defense and liability for the Plan's losses should not be paid by the company that the Plan owns.

81.     Payment by Symbria of millions of dollars of attorneys' fees, costs, litigation expenses, and liabilities to Argent necessarily would adversely impact Symbria's equity value and therefore the value of Plan assets. Direct payment or reimbursement of Argent's attorneys' fees, costs, litigation expenses, and liabilities by Symbria, or the Plan that owns it, would adversely affect the Plan and Plaintiff's and other participants' financial interests.

## CLAIMS FOR RELIEF

## COUNT I

### Causing Prohibited Transactions Forbidden by
### ERISA § 406(a), 29 U.S.C. § 1106(a), Against Argent

82.     Plaintiff incorporates the preceding paragraphs as though set forth herein.

83.     ERISA § 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A), prohibits a plan fiduciary, here Argent, from causing a plan, here the Plan, to engage directly or indirectly in a sale or exchange of any property, here Symbria stock, with a party in interest, here the Selling Shareholders, as took place in the ESOP Transaction.

84.     ERISA § 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B), prohibits Argent from causing the Plan to borrow money from a party in interest, here Symbria and the Selling Shareholders, as took place in the ESOP Transaction.

85.     ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), prohibits Argent from causing the Plan to engage in a transaction that constitutes a direct or indirect transfer to, or use by or for the benefit of, a party in interest, here the Selling Shareholders, of any assets of the Plan, as took place in and after the ESOP Transaction with the transfer of Plan assets as payment for Symbria stock and in continuing payments on the loans.

86.     The stock and loan transactions between the Plan and the parties in interest were authorized by Argent in its capacity as Trustee for the Plan.

17

87.     Argent caused the Plan to engage in prohibited transactions in violation of ERISA § 406(a), 29 U.S.C. § 1106(a), in the ESOP Transaction.

88.     ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate.

89.     ERISA § 502(a), 29 U.S.C. § 1132(a), permits a plan participant to bring a suit for relief under ERISA § 409 and to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

90.     Argent has caused losses to the Plan by the prohibited transactions in an amount to be proved specifically at trial.

## COUNT II

### Breaches of Fiduciary Duty Under ERISA § 404(a), 29 U.S.C. § 1104(a), Against Argent

91.     Plaintiff incorporates the preceding paragraphs as though set forth herein.

92.     ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires, *inter alia*, that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries, (A) for the exclusive purpose of providing benefits to participants and the beneficiaries of the plan and defraying reasonable expenses of administering the plan, (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, and (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with ERISA.

93.     The fiduciary duty of loyalty entails a duty to avoid conflicts of interest and to resolve them promptly when they occur. A fiduciary must always administer a plan with an "eye single" to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor.

94.     ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate.

95.     ERISA § 502(a), 29 U.S.C. § 1132(a), permits a plan participant to bring a suit for relief under ERISA § 409 and to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

96.     Argent was required to undertake an appropriate and independent investigation of the fair market value of Symbria stock in or about October 2015 in order to fulfill its fiduciary duties, and an appropriate investigation would have revealed that the valuation used for the ESOP Transaction did not reflect the fair market value of the Symbria stock purchased by the Plan. The Trustee failed to conduct a thorough investigation into the merits of the investment and further breached its duties in approving the Plan's purchase of Symbria stock at the price agreed to in the ESOP Transaction.

97.     Argent breached its duties under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).

98.     Argent has caused losses to the Plan by its breaches of fiduciary duty in an amount to be proved specifically at trial.

## COUNT III

### Violation of ERISA §§ 410 and 404(a)(1)(A), (B),
### 29 U.S.C. §§ 1110 and 1104(a)(1)(A), (B), Against Argent

99.     Plaintiff incorporates the preceding paragraphs as though set forth herein.

100.    ERISA § 410(a), 29 U.S.C. § 1110(a), provides in relevant part (with exceptions not applicable here) that "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part [Part IV of Subtitle B of Title I of ERISA] shall be void as against public policy." As Part IV of ERISA includes ERISA §§ 404 and 406, 29 U.S.C. §§ 1104 and 1106, any provision that attempts to relieve Argent, a Plan fiduciary, of responsibility or liability is void pursuant to ERISA § 410(a) unless there is an exception or exemption. No such exception or exemption is applicable here.

101.    The DOL Regulations promulgated under ERISA § 410, 29 C.F.R. § 2509.75-4, render "void any arrangement for indemnification of a fiduciary of an employee benefit plan by the plan" because it would have "the same result as an exculpatory clause, in that it would, in effect, relieve the fiduciary of responsibility and liability to the plan by abrogating the plan's right to recovery from the fiduciary for breaches of fiduciary obligations."

102.    ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate.

103.    For an ESOP-owned company, a provision requiring indemnity by the ESOP-owned company is treated as an indemnity provision by the Plan because it effectively requires ESOP participants to pay for the costs of the breaching fiduciaries' liability.

20

104. ERISA § 502(a), 29 U.S.C. § 1132(a), permits a plan participant to bring a suit for relief under ERISA § 409 and to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

105. The indemnification agreement purports to provide payment or reimbursement for the benefit of Argent for its damages, expenses, liabilities, and losses, including but not limited to attorneys' fees.

106. To the extent that the indemnification agreement attempts to relieve Argent of its responsibility or liability to discharge its duties under ERISA, or attempts to have Symbria (a Plan-owned company) and thereby the Plan be responsible for Argent's liability for breaches of the statute, including but not limited to defense costs, such provisions are void as against public policy.

107. To the extent that Argent would seek to enforce such a provision that is void against public policy under ERISA § 410, Argent breached its fiduciary duty under ERISA by failing to discharge its duties with respect to the Plan solely in the interest of the participants and beneficiaries and with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and aims, in violation of ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B).

108. As a result of the foregoing, should it be held liable under the preceding Count I, Argent should be ordered to disgorge any indemnification payments made by Symbria and/or the Plan, plus interest.

## <u>COUNT IV</u>

### Knowing Participation in ERISA Violations Pursuant to 29 U.S.C. § 1132(a)(3), Against the Selling Shareholders

109. Plaintiff incorporates the preceding paragraphs as though set forth herein.

110.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring a civil action to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

111.    The Supreme Court has held that anyone, including a non-fiduciary, who receives the benefit of conduct that violates ERISA may be subject to equitable remedies under ERISA § 502(a)(3) if they have "actual or constructive knowledge of the circumstances that rendered the transaction unlawful." *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 251 (2000).

112.    The Selling Shareholders were parties in interest to the Plan under ERISA § 3(14), 29 U.S.C. § 1002(14), as described above.

113.    As a result of the prohibited transactions described above, the Selling Shareholders received Plan assets for their Symbria stock.

114.    The Selling Shareholders knew or should have known: (1) about the existence of the Plan, (2) about the Plan's purchase, directly or indirectly, of their Symbria stock in the ESOP Transaction, (3) that the Trustee was a fiduciary to the Plan, (4) that they were officers or directors or persons having powers or responsibilities similar to officers or directors, employees, 10% or more shareholders of Symbria, or otherwise parties in interest, (5) that the Plan borrowed from the Selling Shareholders and Symbria to finance the stock purchase, and (6) that the Trustee caused the Plan to engage in the stock purchase and loan transactions.

115.    As officers or directors or persons having powers or responsibilities similar to officers or directors, and as selling shareholders who had knowledge of the deal's details through their negotiation of the ESOP Transaction and through the contracts consummating the ESOP Transaction, the Selling Shareholders were aware of sufficient facts that the ESOP Transaction

constituted a prohibited transaction with parties in interest. As parties in interest, the Selling Shareholders are liable for the violations alleged in Count I.

116. As a result of the breaches of fiduciary duty described above, the Selling Shareholders received Plan assets in payments above fair market value for their Symbria stock.

117. The Selling Shareholders knew or should have known that the Plan overpaid for Symbria stock and that Argent's investigation was inadequate. Symbria was a party to the ESOP Transaction, provided company information in response to other parties' due diligence requests, and appointed Symbria as fiduciary Trustee and thus had a duty to monitor. The Management Shareholders as high ranking Symbria officers (including the CEO, CFO, and President of the largest subsidiary) knew or should have known facts regarding the scope of Argent's due diligence, the information provided to Argent and its agents by Symbria (such as projections), and company valuations, sufficient to give them knowledge of Argent's fiduciary breaches. The Management Shareholders likewise knew or should have known such facts as participants in the Transaction.

118. The Organization Shareholders likewise knew or should have known such facts as directors to whom Transaction details were reported and as participants in the Transaction.

119. The Selling Shareholders are liable for the violations alleged in Count II.

120. The Selling Shareholders have profited from the prohibited transactions and breaches of fiduciary duty in an amount to be proven at trial, and upon information and belief, they remain in possession of some or all of the assets that belong to the Plan.

121. The Selling Shareholders are subject to appropriate equitable relief including disgorgement of any profits, accounting for profits, surcharge, having a constructive trust placed on any proceeds received (or which are traceable thereto), having the transactions rescinded,

requiring all or part of the consideration to be restored to the Plan, or to be subject to other appropriate equitable relief.

**COUNT V**

**Co-Fiduciary Liability Under ERISA § 405(a), 29 U.S.C. § 1105(a)**
**Against the Selling Shareholders**

122.     Plaintiff incorporates the preceding paragraphs as though set forth herein.

123.     ERISA § 405(a)(1), 29 U.S.C. § 1105(a)(1), provides that a fiduciary "with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan . . . if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such an act or omission was a breach."

124.     ERISA § 405(a)(2), 29 U.S.C. § 1105(a)(2), further provides liability on a fiduciary "if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach."

125.     ERISA § 405(a)(3), 29 U.S.C. § 1105(a)(3), further provides liability on a fiduciary "if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach."

126.     The Selling Shareholders were directors (or persons having powers or responsibilities similar to directors) or officers of Symbria with express or functional authority to appoint and remove the Trustee, and thus each Selling Shareholder was a fiduciary with respect to the Plan at the time of the ESOP Transaction.

127.     Given their involvement in the ESOP Transaction, their positions as officers or directors (or persons having powers or responsibilities similar to directors), their access to company financial information, and their appointment of the Trustee, the Selling Shareholders

24

knew or should have known of the fiduciary breaches of Argent in connection with its faulty due diligence and imprudent approval of the stock purchase for more than fair market value, and the Selling Shareholders knowingly participated in Argent's fiduciary breaches, and enabled Argent's fiduciary breach by themselves failing to monitor as required of an appointing fiduciary.

128.     As such, under ERISA § 405(a)(1)-(2), 29 U.S.C. § 1105(a)(1)-(2), the Selling Shareholders are liable as co-fiduciaries for the Plan's losses resulting from Argent's fiduciary breaches.

129.     The Selling Shareholders failed to make reasonable efforts to remedy Argent's violations of ERISA associated with the ESOP Transaction despite knowing of such violations, such as preventing the Plan's overpayment, reimbursing the Plan, or bringing the matter to the attention of the Secretary of Labor.

130.     Pursuant to ERISA § 405(a)(3), 29 U.S.C. § 1105(a)(3), the Selling Shareholders are liable as co-fiduciaries for the Plan's losses resulting from Argent's fiduciary breaches.

## CLASS ACTION ALLEGATIONS

131.     Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23(a) and (b), on behalf of the following class:

> All participants in the Symbria Inc. Employee Stock Ownership Plan (the "Plan") and the beneficiaries of such participants as of the date of the October 31, 2015 ESOP Transaction or anytime thereafter. Excluded from the Class are the shareholders who sold their Symbria, Inc. ("Symbria") stock to the Plan, directly or indirectly, and their immediate families; the directors and officers of Symbria and their immediate families; and legal representatives, successors, and assigns of any such excluded persons.

132.     The Class is so numerous that joinder of all members is impracticable. Although the exact number and identities of Class members are unknown to Plaintiff at this time, the Plan's

most recent Form 5500 filing reports that as of March 31, 2020, there were 1,212 participants in the Plan.

133.    Questions of law and fact common to the Class as a whole include, but are not limited to, the following:

i.    Whether Argent served as Trustee in the Plan's acquisition of Symbria stock;

ii.    Whether Argent was an ERISA fiduciary of the Plan;

iii.    Whether Argent caused the Plan to engage in prohibited transactions under ERISA by permitting the Plan to purchase Symbria stock and take loans from parties in interest;

iv.    Whether Argent engaged in a good faith valuation of the Symbria stock in connection with the ESOP Transaction;

v.    Whether Argent caused the Plan to pay more than fair market value for Symbria stock;

vi.    Whether Argent breached its fiduciary duty to undertake an appropriate and independent investigation of the fair market value of Symbria stock in or about October 2015 and to prevent the Plan from overpaying;

vii.    Whether Symbria was a party in interest;

viii.    Whether the Selling Shareholders were parties in interest;

ix.    Whether the Selling Shareholders, as parties in interest, participated in prohibited transactions and breaches of fiduciary duty;

x.    Whether the Selling Shareholders were fiduciaries;

xi.   Whether the Selling Shareholders are liable as co-fiduciaries for the fiduciary breaches by Argent;

xii.  The amount of losses suffered by the Plan and its participants as a result of Argent's ERISA violations;

xiii. The appropriate relief for Argent's violations of ERISA; and

xiv.  The appropriate relief for the Selling Shareholders' knowing participation in Argent violations of ERISA.

134.    Plaintiff's claims are typical of those of the Class. For example, Plaintiff, like other Plan participants in the Class, suffered a diminution in the value of her Plan account because the Plan paid above fair market value and took on excessive loans for Symbria stock, resulting in her being allocated fewer shares of stock, and she continues to suffer such losses in the present because Argent failed to correct the overpayment by the Plan.

135.    Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel competent and experienced in complex class actions, ERISA, and employee benefits litigation.

136.    Class certification of Plaintiff's Claims for Relief for the alleged violations of ERISA is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Argent, and/or because adjudications with respect to individual Class members would as a practical matter be dispositive of the interests of non-party Class members.

137.    The names and addresses of the Class members are available from the Plan. Notice will be provided to all members of the Class to the extent required by Fed. R. Civ. P. 23.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for judgment against Defendants and for the following relief:

A.   Declare that Defendant Argent caused the Plan to engage in prohibited transactions and thereby breached its duties under ERISA;

B.   Declare that Defendant Argent breached its fiduciary duties under ERISA to the Plan and the class members;

C.   Declare that the Selling Shareholders knowingly participated in prohibited transactions with the Plan and Argent's breaches of fiduciary duty in violation of ERISA;

D.   Declare that the Selling Shareholders are liable as co-fiduciaries for Defendant Argent's breaches of fiduciary duty;

E.   Order Defendants to make good to the Plan and/or to any successor trust(s) the losses resulting from the violations of ERISA and disgorge any profits they made through use of assets of the Plan;

F.   Order rescission of the 2015 ESOP Transaction;

G.   Impose a constructive trust on all payments received by the Selling Shareholders as a result of the 2015 ESOP Transaction;

H.   Order that Defendants provide other appropriate equitable relief to the Plan and its participants and beneficiaries, including but not limited to surcharge, providing an accounting for profits, and imposing a constructive trust and/or equitable lien on any funds wrongfully held by Defendants;

I. Order the proceeds of any recovery for the Plan to be allocated to the accounts of the class members to make them whole for any injury that they suffered as a result of the breaches of ERISA in accordance with the Court's declaration;

J. Order the allocation to the accounts of the class members of the additional shares of stock that would have been allocated but for the Plan's overpayment on company stock and Defendants' breaches of ERISA;

K. Order the removal of the Selling Shareholders as Plan fiduciaries with appointment power over the Plan's trustee or any other fiduciary authority and the replacement of the Selling Shareholders by an Independent Fiduciary and enjoin the Selling Shareholders from acting as a fiduciary for any employee benefit plan that covers or includes any Symbria employees or members of the Class;

L. Declare that the indemnification agreement between Defendant Argent and Symbria violates ERISA § 410, 29 U.S.C. § 1110 and is therefore null and void;

M. Order Defendant Argent to reimburse Symbria for any money paid by Symbria under any indemnification agreement between Argent and Symbria, plus interest;

N. Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained for the common fund;

O. Enjoin Defendants from dissipating any of the proceeds they received from the Transaction held in their actual or constructive possession until the Plan participants' rights can be adjudicated;

P.       Enjoin Defendants from transferring or disposing of any of the proceeds they received from the Transaction to any person or entity, which would prejudice, frustrate, or impair the Plan participants' ability to recover the same;

Q.       Order Defendants to pay prejudgment and post-judgment interest;

R.       Certify this action as a class action pursuant to Fed. R. Civ. P. 23, certify the named Plaintiff as class representative and her counsel as class counsel; and

S.       Award such other and further relief as the Court deems equitable and just.

Dated:    October 29, 2021                              Respectfully submitted,

**BAILEY & GLASSER LLP**

*/s/ Patrick O. Muench*
Patrick O. Muench
318 W. Adams Street
Suite 1606
Chicago, IL 60606
Telephone: (312) 500-8680
Facsimile: (304) 342-1110
pmuench@baileyglasser.com

Ryan T. Jenny
Gregory Y. Porter (*pro hac vice to be filed*)
1055 Thomas Jefferson Street, NW
Suite 540
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103
rjenny@baileyglasser.com
gporter@baileyglasser.com

*Attorneys for Plaintiff*