**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CAROLYN PLACHT, on behalf of the Symbria Inc. Employee Stock Ownership Plan and on behalf of a class of all other persons similarly situated, | ) ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 21 C 5783 |
| v. | ) | |
| | ) | Judge Ronald A. Guzmán |
| ARGENT TRUST COMPANY, JILL KRUEGER, THOMAS NOESEN, JR., JOHN R. CALLEN, CENTRAL BAPTIST VILLAGE, COVENANT RETIREMENT COMMUNITIES, INC., FRANCISCAN SISTERS OF CHICAGO SERVICE CORPORATION, LIFELINK CORPORATION, LUTHERAN HOME AND SERVICES FOR THE AGED, INC., MATHER LIFEWAYS, NORWEGIAN LUTHERAN BETHESDA HOME ASSOCIATION, NORWOOD LIFE CARE FOUNDATION, FRIENDSHIP SENIOR OPTIONS, NFP, REST HAVEN ILLIANA CHRISTIAN CONVALESCENT HOME, ST. PAUL'S HOUSE & HEALTHCARE CENTER, and UNITED METHODIST HOMES & SERVICES, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

For the reasons explained below, the motion of Defendant Argent Trust Company to dismiss under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), joined by all Defendants as to the arguments under Rule 12(b)(1), is denied; the motion of Defendants Jill Krueger and Thomas Noesen, Jr. to dismiss under Federal Rule of Civil Procedure 12(b)(6), joined by Defendant John R. Callen, is denied; and the motion of Defendants Mather Lifeways, Covenant Retirement Communities, Inc., United Methodist Homes & Services, St. Paul's House & Healthcare Center, Norwood Life Care Foundation, Central Baptist Village, Lifelink Corporation, Norwegian Lutheran Bethesda Home Association, Friendship Senior Options, NFP, Rest Haven Illiana Christian Convalescent Home, Franciscan Sisters of Chicago Service Corporation, and Lutheran Home and Services for the Aged, Inc. to dismiss the complaint under Rule 12(b)(6) is granted.

**RELEVANT BACKGROUND**

This is an ERISA[1] action brought individually and on behalf of a putative class by Carolyn Placht, a participant in the retirement plan (the "Plan") of Symbria Inc. ("Symbria"), regarding the October 31, 2015 purchase of all issued and outstanding shares of Symbria by the Plan and its Trust, the Symbria Inc. Employee Stock Ownership Trust; the stock purchase is referred to as the "ESOP Transaction."  Defendants are Argent Trust Company ("Argent"), the Plan's Trustee leading up to and through the ESOP Transaction, and the sellers of the Symbria shares (collectively, the "Selling Shareholders"), which the parties sort into two groups: (1) the "Management Shareholders," made up of Jill Krueger, then President and CEO of Symbria; Thomas Noesen, Jr., then CFO of Symbria; and John R. Callen, then President of a Symbria Subsidiary, Alliance Rehab/Symbria Rehab; and (2) the "Organizational Shareholders" (or "Community Defendants"), made up of Mather Lifeways; Covenant Retirement Communities, Inc.; United Methodist Homes & Services; St. Paul's House & Healthcare Center; Norwood Life Care Foundation; Central Baptist Village; Lifelink Corporation; Norwegian Lutheran Bethesda Home Association; Friendship Senior Options, NFP; Rest Haven Illiana Christian Convalescent Home; Franciscan Sisters of Chicago Service Corporation; and Lutheran Home and Services for the Aged, Inc.

Prior to the ESOP Transaction, Symbria's Board of Directors had fourteen directors appointed by the then-owners of its shares.  The twelve Organizational Shareholders held thirteen of the fourteen "ownership interests" in Symbria.  Each Organizational Shareholder owned one such share, entitling each to appoint one director to Symbria's Board of Directors. Plaintiff presumes that one of the organizations held a second ownership interest.  The Management Shareholders collectively held the final ownership interest in Symbria.

In the ESOP Transaction, the Plan and Trust paid $66,500,000.00 to purchase the outstanding Symbria shares, using the proceeds of a loan guaranteed by Symbria and a loan, at a 2.64% interest rate, from the Management Shareholders and Organizational Shareholders. Without vouching for the accuracy of the valuations, Plaintiff asserts that the stock was revalued at $9,300,000.00 on March 31, 2016; $7,800,000.00 in 2017; $11,000,000.00 in 2018; $10,900,000.00 in 2019; and $8,650,000.00 in 2020, while Symbria contributed millions of dollars to the Plan.

Plaintiff deems it likely that evidence will support that the Plan and Trust paid more than fair market value for the stock and "paid a control premium for Symbria" despite not acquiring control over the Symbria Board of Directors in the ESOP Transaction.  Plaintiff attributes the overpayment to Argent's failure to use due diligence during the ESOP Transaction by relying "on unrealistic growth projections, unreliable or out-of-date financials, improper discount rates, inappropriate guideline public companies for comparison, and/or [] fail[ing] to test [], . . . question or challenge underlying assumptions."  (ECF No. 1, Compl., ¶ 71.)

---

[1]The Employee Retirement Income Security Act ("ERISA") is codified at 29 U.S.C. § 1001 *et seq*., and the Court will cite the codified statute for ease of reference.

Plaintiff concludes that Argent violated its fiduciary duties as Trustee by: (1) causing prohibited transactions during the ESOP Transaction, in the form of: (a) a purchase of property from a party or parties in interest; (b) borrowing money from parties in interest; and (c) a direct or indirect transfer to, or use by or for the benefit of, a party in interest of any assets of the Plan; (2) failing to conduct a thorough investigation into the merits of the investment and approving the ESOP Transaction; and (3) to the extent Argent has done so, seeking indemnification from Symbria as to Argent's breaches of ERISA. (ECF No. 1, Counts I-III.)

According to Plaintiff, the ESOP Transaction provided tax advantages to the Selling Shareholders, and the Management Shareholders received other economic incentives through the ESOP Transaction. Plaintiff insists that the Selling Shareholders: (1) were Argent's co-fiduciaries and should be held liable for Argent's breaches of fiduciary duty; and (2) constituted parties in interest, as ERISA defines the term, in the ESOP Transaction and had sufficient knowledge to subject them to liability for equitable remedies under ERISA as to the allegedly prohibited transactions and Argent's breaches of fiduciary duty. (*id.*, Counts IV-V.)

Plaintiff claims that Defendants' actions caused Plan participants to suffer diminutions of Plan account values due to the ESOP Transaction overpayment and an ongoing excessive debt burden due to Argent's failure to correct the overpayment.

Argent moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). The Organizational Shareholders and Management Shareholders join Argent's motion under Rule 12(b)(1) and separately move to dismiss the complaint under Rule 12(b)(6). The motions are fully briefed.

## DISCUSSION

The Court first will address Defendants' unified motion to dismiss for lack of subject matter jurisdiction and then proceed to address their various arguments as to why the counts against them should be dismissed for failure to state a claim on which relief may be granted.

## I.  Motion to Dismiss for Lack of Subject-Matter Jurisdiction

Defendants argue that Plaintiff lacks standing because she has not plausibly alleged an injury-in-fact. (ECF No. 33, Mem. Supp. Def. Argent Trust Co.'s Mot. Dismiss, at 11-14; ECF No. 30, Mem. Supp. Defs. Krueger & Noesen's Mot. Dismiss, at 5; Mem. Supp. Community Defs.' Mot. Dismiss, at 9-10.)[2]  "Without injury, there can be no Article III standing, which requires a plaintiff to show an injury-in-fact that is fairly traceable to the defendant's conduct and that could likely be redressed by a favorable court decision." *Abbott v. Lockheed Martin Corp.*, 725 F.3d 803, 808 (7th Cir. 2013).

---

[2] Throughout this memorandum opinion and order, for consistency, citations refer to the docket paginations stamped at the top of each filed document, rather than those found at the bottom of the pages.

Defendants insist that Plaintiff's allegations demonstrate that she suffered no injury. They acknowledge Plaintiff's comparison of the $65,000,000.00 Symbria stock purchase price in the ESOP Transaction with the $9,300,000.00 stock valuation (the accuracy of which Plaintiff disavows) five months later (*see* ECF No. 1 ¶ 69), but they deem it a "misinformed stock-price comparison" that is debunked in *Lee v. Argent Trust Co*., No. 5:19-cv-156-BO, 2019 WL 3729721 (E.D.N.C. Aug. 7, 2019). (ECF No. 33 at 13-14.) The *Lee* court analogized an ESOP transaction to a home purchase through mortgage financing and reasoned that, if a buyer mortgages the entire purchase price of the home at its exact value, the buyer should have no change in equity from the transaction because the house value would be fully offset by the mortgage debt incurred. *Id*. at *3. The court then extended that reasoning to stock purchases—that the purchaser should experience no change in equity when financing the full purchase price of stocks that are correctly valued; thus, the court concluded that, immediately after the ESOP transaction, "the expected value of the . . . ESOP's shares—at least in the short term—would be $0." *Id*. at *4. Because the *Lee* plaintiff had alleged only a post-sale positive valuation, the court found that she had apparently realized a benefit, rather than a concrete and particularized injury, from the transaction and therefore lacked standing to pursue an ERISA claim. *Id*.; *see also Plutzer v. Bankers Trust Co. of S.D.*, No. 1:21-cv-3632 (MKV), 2022 WL 596356, at *5 (S.D.N.Y. Feb. 28, 2022) (adopting the *Lee* court's reasoning where the plaintiff alleged that post-ESOP-transaction valuations over the next four years showed that the stock value "had 'decreased 92.6553% from its purchase price in 2015, and 68.1818% from the post-ESOP Transaction high . . . at the end of 2017'").

The Court declines to follow *Lee* for two reasons. First, the Seventh Circuit has rebuffed similar arguments at the pleading stage, because "[i]njury-in-fact for standing purposes is not the same thing as the ultimate measure of recovery." *Abbott*, 725 F.3d at 808. The *Abbott* court explained that a plaintiff "satisfie[s] [her] burden" of establishing "injury-in-fact for pleading purposes" by "alleging [] harm[] [from the defendant's] mismanagement of the [fund]." *Id*. at 809 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("'[G]eneral factual allegations of injury resulting from the defendant's conduct may suffice' to establish standing at the pleading stage[.]"); *Alliant Energy Corp. v. Bie*, 277 F.3d 916, 919-20 (7th Cir. 2002)); *see also Allen v. GreatBanc Trust Co.*, 835 F.3d 670, 680 (7th Cir. 2016) ("GreatBanc argues that the post-transaction decline in stock value is precisely what economists predict should happen after an ESOP transaction, and therefore it is not evidence of fiduciary breach. But whether the 22% decline in value—a decline that lasted not months but years and ballooned to nearly 50%—was the result of normal economic forces or something more sinister is a matter for a later stage of litigation.").

Second, even accepting the *Lee* premise that a purchaser would incur no change in equity before and after a properly priced financed purchase transaction is anticipated to be unchanged does not require a determination that Plaintiff here was uninjured in the ESOP Transaction. Plaintiff does not include allegations regarding the ESOP's equitable positions before and after the transaction and thus has not pleaded a lack of (or positive) change in equitable position. Instead, she alleges that the asset purchased (here, the Symbria stock) was significantly devalued (with valuations between $7,800,000.00 and $11,000,000.00 as compared to the $66,500,000.00 purchase price) following the purchase. The *Lee* court did not explain the consequences of a negative post-sale house valuation, and a purchase of privately held stock in any event differs

from that of a home in material respects. Unlike real estate, for which valuation estimations are widely publicly available and mortgages are secured by outside providers, privately held stock valuations typically are not public, *see Zavala v. Kruse-W., Inc.*, 398 F. Supp. 3d 731, 745 (E.D. Cal. 2019) ("[W]here, as here, the stock is privately held, . . . [t]here is no objective price of the stock to serve as a baseline. Rather than the price of the stock being set by the 'wisdom of the crowd,' the price is simply what the buyer ultimately pays."), and the transaction is financed by parties to the transaction. The extensive nature of ERISA's protections also undermines the applicability of "caveat emptor" to such transactions. *See Lewis v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 431 F. Supp. 271, 275–76 (E.D. Pa. 1977) ("ERISA may logically be considered the most recent stride in Congress's grand march to modify the rule of caveat emptor as applied to securities transactions."). Finally, even were the Court to assume that Plaintiff's valuations referred to the ESOP's equitable position, Plaintiff also alleges that Symbria later paid millions of dollars into the ESOP, and the Court is unable to assess at this early stage to what extent those contributions may have affected subsequent valuations.!

Plaintiff has sufficiently alleged an injury for this stage of the case. *See McMaken v. GreatBanc Trust Co*., No. 17 C 4983, 2019 WL 1468157, at \*10 (N.D. Ill. Apr. 3, 2019) (holding that plaintiff had standing for stock overvaluation claim even though plaintiff alleged shares had gone up since purchase, as it was "sufficient that [he] has alleged a plausible harm to the true value of the stock . . . as a result of [the trustee's] misvaluation").

## II. Motions to Dismiss for Failure to State a Claim on Which Relief May Be Granted

For the purposes of a motion to dismiss under Rule 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiff, accepts as true all well-pleaded facts therein, and draws all reasonable inferences in the plaintiff's favor. *See Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

ERISA is a "comprehensive [federal] statute" that "sets various uniform standards, including rules concerning . . . fiduciary responsibility, for both pension and welfare plans." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90-91 (1983). As is relevant here, ERISA: (1) imposes duties of loyalty and prudence upon any person acting as a "fiduciary" to an employee retirement plan and liability for breaches of those duties, *Allen*, 835 F.3d at 678; (2) forbids fiduciaries from "causing" their plan to enter into "insider" transactions that are "presumably not at arm's length," *Lockheed Corp. v. Spink*, 517 U.S. 882, 893 (1996); (3) subjects plan fiduciaries to liability if they "knowingly participate in," "enable," or "have knowledge of" a breach by another plan fiduciary; and (4) even provides for liability (limited to equitable relief) as to certain non-fiduciaries related to ERISA breaches, 29 U.S.C. § 1132(a)(3); *see Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc*., 530 U.S. 238, 250-51 (2000) (holding that the authorization in § 502(a)(3) [29 U.S.C. § 1132(a)(3)] for "a 'participant, beneficiary, or fiduciary' of a plan to bring a civil action to obtain 'appropriate equitable relief' to redress

violations of ERISA Title I . . . extends to a suit against a nonfiduciary 'party in interest' to a transaction barred by § 406 [29 U.S.C. § 1106]"). Plaintiff seeks to pursue claims within those four categories; she also contends that any indemnification provision requiring Symbria to indemnify Argent for its own fiduciary breaches would be "void."

### A. Breach of Fiduciary Duties or Co-Fiduciary Responsibility for Fiduciary Breach

Plaintiff alleges in Count II that Argent breached its fiduciary duties of prudence and loyalty, based on its alleged failure to discover overstated valuations and overzealous projections shared by Symbria in connection with the ESOP Transaction, and therefore caused the Plan to purchase Symbria shares in a financed transaction at an inflated price. In Count V, Plaintiff alleges that all Selling Shareholders are liable as co-fiduciaries.

In relevant part, 29 U.S.C. § 1104(a)(1) holds plan fiduciaries to a "prudent man standard of care":

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and--
>
> (A) for the exclusive purpose of:
>
>> (i) providing benefits to participants and their beneficiaries; and
>>
>> (ii) defraying reasonable expenses of administering the plan;
>
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims . . . .

29 U.S.C. § 1104(a)(1)(A), (B). "In order to state a claim for breach of fiduciary duty under ERISA, the plaintiff must plead (1) that the defendant is a plan fiduciary; (2) that the defendant breached its fiduciary duty; and (3) that the breach resulted in harm to the plaintiff." *Allen*, 835 F.3d at 678 (internal punctuation and citation omitted).

Fiduciaries also can be held responsible for breaches by other fiduciaries under some circumstances. "[A] fiduciary with respect to a plan shall be liable for a breach" by another fiduciary: "(1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; . . . or (3) if he has knowledge of a breach by other such fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach." 29 U.S.C. § 1105(a). Because ERISA plaintiffs generally have no access to inside information regarding a fiduciary's decision-making process, they need not plead minute details, as long as the facts alleged tell a plausible story. *Allen*, 835 F.3d at 678.

### 1. Whether Defendants Are Plan Fiduciaries

"The threshold question in all cases charging breach of fiduciary duty is whether the defendant was 'acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint.'" *Scott v. Aon Hewitt Fin. Advisors, LLC*, No. 17 C 679, 2018 WL 1384300, at *3 (N.D. Ill. Mar. 19, 2018) (quoting *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000)). ERISA fiduciaries are "persons named as fiduciaries by a benefit plan" or "anyone else who exercises discretionary control or authority over the plan's management, administration, or assets." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251 (1993); *see* 29 U.S.C. § 1002(21)(A). The former are often referred to as "named fiduciaries," while the latter are frequently labeled "functional fiduciaries." *Teets v. Great-W. Life & Annuity Ins. Co.*, 921 F.3d 1200, 1206 (10th Cir. 2019). A party "exercising discretionary control over a plan's management or administration . . . is to that extent behaving as a fiduciary," as is a party "to the extent that it exercises de facto control over plan decisions through the plan administrators it selects." *Howell v. Motorola, Inc.*, 633 F.3d 552, 562–63 (7th Cir. 2011).

There appears to be no dispute that Argent, the trustee, qualifies for pleading purposes as a fiduciary, as both a named fiduciary and a functional fiduciary due to its "discretionary authority or discretionary control respecting management or disposition of the Plan's assets," and "sole and exclusive authority to negotiate and approve the ESOP Transaction and to authorize the Transaction on the Plan's behalf." (ECF No. 1 ¶¶ 16-17, 50, 51.) The remaining Defendants are not claimed to have been named as fiduciaries in the benefit Plan, and they dispute Plaintiff's classification of them as functional fiduciaries who could be held liable as co-fiduciaries for any fiduciary breach by Argent.

#### a. Management Shareholders

The Management Shareholders argue that Plaintiff failed to plead facts showing that they exercised discretionary authority or control over the ESOP or its assets. (ECF No. 30 at 8-10.)

Plaintiff counters that: (1) Krueger and Noesen were officers of Symbria, and Callan was the officer of one of Symbria's subsidiaries; (2) as of the ESOP Transaction they collectively owned one ownership interest in Symbria and thus shared the right to appoint one Symbria director; (3) they probably, either directly or through "an ESOP 'Steering Committee'" under their "control[], appointed Argent as trustee, or presented Argent for appointment"; (4) Noesen signed the Plan's Form 5500[3] in 2016; and (5) one of the three likely was a director. (ECF No. 1 ¶¶ 19-21, 57,-58, 60; ECF No. 48, Pl.'s Opp'n, at 11-13.) Plaintiff also argues that Krueger signed the letter agreement confirming Argent as trustee for the ESOP Transaction. (ECF No. 48 at 16.)

Because a functional fiduciary is so labeled due to authority or control over the *plan's management or assets*, a person's role as an officer of the employer company, here Symbria (or

---

[3] "Form 5500 is an annual report disclosing financial and actuarial information that is required to be filed with the Secretary of Labor under ERISA." *Bolssen v. Unum Life Ins. Co. of Am.*, 629 F. Supp. 2d 878, 882 (E.D. Wis. 2009) (citing 29 U.S.C. §§ 1023, 1024).

its subsidiary), does not, without more, determine that person's fiduciary status as to the plan. *Int'l Painters & Allied Trades Indus. Pension Fund v. Clayton B. Obersheimer, Inc.*, No. CIV.A. ELH-12-1000, 2013 WL 594691, at *10 (D. Md. Feb. 13, 2013) ("[A] district court is 'not free to conclude that [an individual's] status as an officer of [a company] ma[kes] him a fiduciary of [an ERISA] Plan.'") (alterations in original) (quoting *Finkel v. Romanowicz*, 577 F.3d 79, 86 (2d Cir. 2009)). Nor does the Management Shareholders' collective authority to appoint a single member of the fourteen-member board of directors tie the Management Shareholders themselves to Plan management or asset authority or control.

Plaintiff therefore argues that the Management Shareholders took other actions indicating the requisite authority or control, including signing forms. But, although Krueger signed Argent's trustee appointment on Symbria's behalf, Plaintiff specifically alleged that *Symbria* approved Argent's appointment. (ECF No. 1 ¶ 50.) Krueger being empowered to sign the resulting trustee appointment on behalf of the company, which cannot sign without such an actor, does not, without more, indicate her requisite control or authority over the Plan's management or the management or disposition of its assets. Noesen's signature on a post-ESOP-Transaction Form 5500 also does not indicate his level of authority or control over Plan management or asset control or disposition at the time he signed in 2016, *see Reed v. Queens Village Committee for Mental Health for J-CAP, Inc.*, No. 18CV3114AMDJO, 2019 WL 4452386, at *6 (E.D.N.Y. Sept. 17, 2019) ("The authority to fill out and sign annual forms is not the same as 'discretionary authority or discretionary control respecting management' of plan assets or respecting 'administration' of the plan."), much less at the time of the ESOP Transaction in 2015.

Plaintiff has more success with her final allegation as to the three Management Shareholders—that they likely directly or through a steering committee they controlled, appointed Argent. Taking that allegation as true for the purposes of the present motion, it is reasonable to infer that these Defendants may constitute fiduciaries as to Argent's appointment as trustee for the Plan in advance of the anticipated ESOP Transaction, resulting in a duty to monitor Argent, *see Howell*, 633 F.3d at 573 (explaining that those who appoint plan administrators "have an ongoing fiduciary duty under ERISA"). The fact that Plaintiff cannot allege these Defendants' involvement with greater specificity does not compel dismissal. *See Teamsters Loc. Union No. 727 Health & Welfare Fund v. De La Torre Funeral Home & Cremation Servs., Inc.*, No. 19 C 6082, 2021 WL 843453, at *3 (N.D. Ill. Mar. 5, 2021) (declining to grant motion to dismiss where allegations upon information and belief were related to matters internal to the business and defendants' knowledge); *R.R. Maint. & Indus. Health & Welfare Fund v. Hacker*, No. 10-3305, 2011 WL 5008311, at *5 (C.D. Ill. Oct. 20, 2011) (explaining that "the role of a corporate director and officer in the internal decisions of the company is peculiarly within the Defendants' knowledge" and may be pleaded upon information and belief ).

### b. Organizational Shareholders

The Organizational Shareholders argue that, as to the ESOP Transaction, Plaintiff has not alleged facts indicating that they were fiduciaries. Plaintiff alleges in the Complaint that these Defendants "were directors (or persons having powers or responsibilities similar to directors) . . .

with express or functional authority to appoint and remove the Trustee[,]" making each "a fiduciary with respect to the Plan at the time of the ESOP Transaction." (ECF No. 1 ¶ 126.) After scrutiny, the Court agrees with these Defendants that Plaintiff's allegations are insufficient to permit a reasonable inference that they were fiduciaries.

Although Plaintiff alleges that the Organizational Shareholders were *each* permitted to *appoint* one[4] board member of Symbria's fourteen-member board, it does not follow that the entities themselves were board members or had like powers and responsibilities. Those allegations do not plausibly suggest that any Organizational Shareholder itself had "discretionary authority or discretionary responsibility in the management of" the Plan.

Plaintiff insists that such responsibility can be inferred because Symbria appointed Argent as trustee and had directorial control over the Plan or its assets, but those allegations, too, fail to factually link the Organizational Shareholders themselves to the necessary control or authority over the Plan. *See Howell*, 633 F.3d at 562–63 (explaining that, even assuming company had appointed all committee members administering plan, that fact alone was insufficient to indicate that the company itself was a plan fiduciary). Plaintiff does not bridge the gap with apposite caselaw analyzing the potential fiduciary status of an entity with the power to appoint one member of a large board. Instead, Plaintiff relies first upon cases generally analyzing the fiduciary status of boards of directors or directors themselves, which are inapposite given that the Organizational Shareholders were not board members or directors. She also cites one case involving a named plan trustee who had abstained from votes in the subject ESOP transactions but, under "the two hats doctrine," nevertheless had exercised fiduciary authority because he fired an "appraiser for being too thorough," hired a replacement, influenced valuation outcomes, "ma[de] his personal preferences known to" the other trustees, and "actively participat[ed] in all meetings related to the transactions." (*See* ECF No. 47 at 17 n.11 (citing, *inter alia*, *Perez v. Bruister*, 823 F.3d 250, 259-60 (5th Cir. 2016)). Because the Organizational Shareholders were not themselves on the board, each had authority limited to appointing a member of the fourteen-member board, and they are not said to have worn "two hats" as to the ESOP Transaction or to have directly acted to influence the stock valuation as did the plan trustee in *Perez*, none of the cases are illustrative.

Plaintiff then shifts gears and lumps together the Organizational Shareholders, arguing that, collectively, they could appoint thirteen board members (implying that they could align to functionally control Symbria's fourteen-person Board). (ECF No. 74, at 17.) Again, though, Plaintiff provides no facts connecting the organizations with each other or demonstrating that the organizations themselves, together or separately, had sufficient authority, control, or responsibility over the Plan or its assets. Finally, that each Organizational Shareholder ultimately agreed in writing to sell its shares in the ESOP Transaction does not tend to suggest that each or any had the necessary control or authority as to the Plan or its assets. The allegations do not plausibly suggest that any Organizational Shareholder was a Plan fiduciary.

---

[4] It is inconsequential to the functional-fiduciary analysis that one of the Organizational Shareholders may have owned two Symbria shares and the ability to appoint two of the fourteen board members, as opposed to one.

2. **Whether Defendants Are Plausibly Alleged to Have Breached Their Fiduciary Duties**

   a. **Trustee**

In Count II, Plaintiff alleges that Argent violated its fiduciary duties under 29 U.S.C. 1104(a) by failing "to conduct a thorough investigation into the merits of the investment" and thus "approving the Plan's purchase of Symbria stock at the [allegedly inflated] price agreed to in the ESOP Transaction," causing the Plan to incur an overlarge debt. (ECF No. 1 ¶ 96.) Plaintiff says that stock valuation decreased from $9,300,000.00 five months after the sale to $8,650,000.00 in 2020.

Argent labels these allegations "spare" and attacks them as insufficient. Plaintiff counters that she "cannot plead additional facts regarding Argent's investigation into the Symbria stock or business information related to the company's value because that is non-public confidential information." (ECF No. 46 at 18.) Under the circumstances, the Court agrees that Plaintiff need not allege more regarding either Argent's alleged failures or the company valuation. *See Allen*, 835 F.3d at 677 ("[I]nformation about . . . how a stock was valued is confidential information" generally unavailable absent "the protections of the discovery process").

Plaintiff has sufficiently alleged a plausible breach of fiduciary duty by Argent. Argent was required to fulfill the duties of loyalty and prudence. "Loyalty requires a fiduciary to act 'for the exclusive purpose' of providing benefits to participants." *Id.* at 678 (citing 29 U.S.C. § 1104(a)(1)(A)-(B)). "Prudence requires the fiduciary to act 'with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent [person] acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.'" *Id.* (quoting 29 U.S.C. § 1104(a)(1)(A)-(B), alteration in original). The prudence standard is process-based, not outcome-based. *Martin v. CareerBuilder, LLC*, No. 19 C 6463, 2020 WL 3578022, at *4 (N.D. Ill. July 1, 2020). In the case of an ESOP transaction, "[t]he trustee only need[s] to focus on paying no more than a fair price for the [company] shares on the ESOP's behalf." *Acosta v. Vinoskey*, 310 F. Supp. 3d 662, 681 (W.D. Va. 2018).

Here, the subject stock was not publicly traded, and Plaintiff asserts that the price paid did not adequately reflect its value and that the ensuing debt, financed by the Selling Shareholders, was excessive; she therefore sufficiently alleges a breach of Argent's duty of prudence, particularly considering the decreased valuations as Symbria continued to funnel money into the plan. *See Allen*, 835 F.3d at 678-79 (holding that plaintiff met burden by alleging a drop in stock price, a loan from sellers rather than an outside entity, and a high interest rate); *Lysengen v. Argent Trust Co.*, 498 F. Supp. 3d 1011, 1022-23 (C.D. Ill. 2020) ("[T]he Court is satisfied that Plaintiff's assertion that the loan came from the employer and seller, that the valuation had flaws, and that the subsequent price drop reflects a lack of due diligence is enough to nudge her claim 'across the line from conceivable to plausible.'"); *Zavala*, 398 F. Supp. 3d at 745-46 (finding that similar allegations were "essentially indistinguishable from those in *Allen*, in which it also was alleged that 'GreatBanc failed to conduct an adequate inquiry into the value of Personal-Touch's stock'"); *Blackwell v. Bankers Trust Co. of S.D.*, No. 3:18-CV-141-CWR-

10

FKB, 2019 WL 1433769, at *3-4 (S.D. Miss. Mar. 29, 2019) (denying motion to dismiss claims of breach of fiduciary duty by trustee where plaintiff alleged that trustee relied upon unrealistic growth projections and unreliable financials without sufficient investigation). This conclusion dovetails with ERISA's status as a "remedial statute to be liberally construed in favor of employee benefit fund participants." *Allen*, 835 F.3d at 673 (quoting *Kross v. W. Elec. Co.*, 701 F.2d 1238, 1242 (7th Cir. 1983)). Of course, Plaintiff will be required to elaborate on her allegations and prove her claims as the case proceeds.

### b. Alleged Co-Fiduciaries

In Count IV, Plaintiff alleges that the Selling Shareholders are subject to co-fiduciary liability for Argent's alleged breaches. ERISA provides for such liability under the following circumstances:

> (1) if [the named fiduciary] participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;
>
> (2) if, by [the named fiduciary's] failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
>
> (3) if [the named fiduciary] has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

29 U.S.C. § 1105(a).

### i. Management Shareholders

The Management Shareholders are alleged to have appointed the plan administrator, giving them "an ongoing fiduciary duty under ERISA to monitor the activities of their appointees." *See Howell*, 633 F.3d at 573. "The Department of Labor has explained that the duty [to monitor] requires reviewing 'the performance of trustees and other fiduciaries' at 'reasonable intervals' and 'in such [a] manner as may be reasonably expected to ensure that their performance has been in compliance with the terms of the plan and the statutory standards, and satisfied the needs of the plan.'" *Bartnett v. Abbott Labs.*, No. 20 C 2127, 2021 WL 428820, at *5 (N.D. Ill. Feb. 8, 2021) (citing 29 C.F.R. § 2509.75-8 at FR-17 (Department of Labor questions and answers)).

Although Defendants argue that Plaintiff has not plausibly alleged their actual knowledge or that they enabled a fiduciary breach by Argent (ECF No. 30 at 9-11), Plaintiff's allegations that the Management Shareholders caused the appointment of Argent to oversee the ESOP Transaction and knew the company's true valuation but failed reasonably to monitor Argent's ensuing performance suffice for this stage in the case. *See Gamino v. KPC Healthcare Holdings,*

*Inc.*, No. 5:20-CV-01126-SB-MRW, 2021 WL 5104382, at *7 (C.D. Cal. Nov. 1, 2021) (holding that plaintiff sufficiently alleged knowledge on part of in-house attorney who was longstanding personal attorney to principal in business and also sold shares at same price on the same day as principal); *Foster v. Adams & Assocs., Inc.*, No. 18-CV-02723-JSC, 2020 WL 3639648, at *4 (N.D. Cal. July 6, 2020) (holding that "allow[ing] the trustee to misvalue the shares of a private company based on an inaccurate picture of the company's financial status" can suffice as to certain defendants); *Pizzella v. Reliance Trust Co.*, No. CV-19-03178-PHX-JJT, 2020 WL 805527, at *2-3 (D. Ariz. Feb. 18, 2020) (concluding that plaintiff pleaded actual knowledge of co-fiduciary breach where company's principal officer, sole shareholder, and sole director, who appointed the trustee, provided an operations overview and company outlook, and rushed the transaction timeline); *Acosta v. Saakvitne*, 355 F. Supp. 3d 908, 923 (D. Haw. 2019) (holding that allegations that owner/board members "knowingly provid[ed] [the ESOP trustee] with flawed information about the Company, permitt[ed] him to overstate the value of the Company's shares, and permitt[ed] him to direct the ESOP to purchase the shares for more than they were worth" were "sufficient" for claims against the owner-board members "for a breach of duty to monitor" the trustee and co-fiduciary liability under §§ 1105(a)(1) and (3);[5] *Gedek v. Perez*, 66 F. Supp. 3d 368, 384-85 (W.D.N.Y. 2014) (denying motion to dismiss where plaintiff had alleged defendants' knowledge of company's financial insecurities but reiterating that "this is not meant to suggest that the Court believes that this claim has merit," which "is not the issue before me on these motions to dismiss"); *Chesemore v. Alliance Holdings, Inc.*, 886 F. Supp. 2d 1007, 1057 (W.D. Wis. 2012) (holding that company violated its duty to monitor ESOP trustee's performance by "fail[ing] to adopt any system for monitoring [trustee's] actions as the trustee of the Alliance ESOP in a fashion reasonably designed to prevent him from breaching his duty of loyalty under § 404(a) or entering prohibited transactions under § 406(b) [29 U.S.C. § 1106]"); *see also* 29 U.S.C. § 1105(a)(3) (providing for liability "if [the named fiduciary] has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach"). Plaintiff therefore may proceed against these Defendants on this claim.

### ii. Organizational Shareholders

Plaintiff argues that the Organizational Shareholders, as co-fiduciaries who willingly sold stock through an ESOP transaction and with knowledge of Argent's breach, also are responsible for Argent's alleged breaches of fiduciary duty. The Court, though, has already found that the allegations of the complaint are insufficient for an inference that the Organizational Shareholders were fiduciaries. They thus do not fall within the terms of 29 U.S.C. § 1105(a)(1)-(3). There also is no basis to assume they should have known or did know of any flaws in the stock or company valuation or any deficiencies in Argent's evaluation. That they knew the sale price for the stock they were selling, without more, is not enough to plausibly suggest liability under § 1105(a).

---

[5] As the court emphasized, "[w]hether [defendants, who were owners/board members,] in fact knew that the LVA valuation reports were overstated valuations based on their expertise and understanding of the Company's financial projections is a question beyond the scope of the present motion." *Saakvitne*, 355 F. Supp. 3d at 924.

## B. ERISA Breach Through Prohibited Transactions

Section 1106(a) pertains to transactions between a plan and a "party in interest" and provides that a plan fiduciary "shall not cause the plan to engage in" certain transactions. 29 U.S.C. § 1106(a)(1). In Count I, Plaintiff claims that Symbria and every Selling Shareholder constituted a party in interest under ERISA and that Argent, the Plan fiduciary, violated ERISA, 29 U.S.C. § 1106(1)(1)(A) and (B), by engaging in a transaction that Argent knew or should have known constituted a direct or indirect sale or exchange or lending of money or extension of credit between the Plan and the Selling Shareholders. In Count IV, she alleges that the Selling Shareholders were parties in interest with actual or constructive knowledge of the conditions making the transaction unlawful. Defendants move to dismiss these claims.

### 1. Trustee

Argent argues that Plaintiff has affirmatively pleaded facts demonstrating that the ESOP Transaction satisfied two ERISA exemptions because: (1) the transaction involving "the acquisition by a plan of qualifying employer securities" was "for adequate consideration" and no commission was charged; and (2) the loan the ESOP assumed in the ESOP Transaction was permissible as "primarily for the benefit of participants" and "at an interest rate which [wa]s not in excess of a reasonable rate." (*See* ECF No. 33 at 19-20 (quoting 29 U.S.C. §§ 1108(e), 1108(b)(3))).

Although ERISA does exempt transactions satisfying either of the above from being prohibited transactions, the Seventh Circuit has held that "an ERISA plaintiff need not plead the absence of exemptions to prohibited transactions." *Allen*, 835 F.3d at 675 (citing *Fish v. GreatBanc Trust Co.*, 749 F.3d 671, 685 (7th Cir. 2014)); *see also United States v. N. Trust Co.*, 372 F.3d 886, 888 (7th Cir. 2004) (observing that a complaint must only state a claim on which relief may be granted and need not "plead around defenses").

Plaintiff thus did not need to plead that any exemption did not apply. And her allegations do not affirmatively plead that either exemption applies, *i.e.*, that consideration was incontrovertibly adequate or that the loan was at a reasonable rate of interest and primarily benefited the participants.

As to the § 1108(e) exemption, although Argent would like the Court to infer, based upon the reasoning in *Lee*, 2019 WL 3729721, that the Plan's reported valuations of between $7,800,000.00 and $11,000,000.00 indicate that the stocks were worth more than Plaintiff paid (*see* ECF No. 33, at 19), the Court declines to draw that inference from the pleadings alone, for the reasons stated above. Plaintiff's allegations plausibly suggest an overpayment in the ESOP Transaction, which is sufficient for this stage. *See Lysengen*, 498 F. Supp. 3d at 1019-20 (concluding that "Plaintiff has plausibly alleged that the stock price movement is suspicious and suggests the ESOP overpaid" and that "defendants cannot defeat Plaintiff's claims based on their assertion that the stock price was reasonable"); *Gamino*, 2021 WL 162643, at *3 ("But *Lee*[, 2019 WL 3729721,] did not involve the additional allegations here—the prior purchase at a significantly lower price and subsequent financial distress—which support (at least for the purposes of a 12(b)(6) motion) the plausible inference that the 2015 transaction was not for fair

market value."). The Court similarly declines to determine at this stage the applicability of the exception in 1108(b)(3); the Court cannot on this record determine the primary beneficiaries of the loan or the reasonableness of its interest rate. *See Schmalz v. Sovereign Bancorp, Inc.*, 868 F. Supp. 2d 438, 458 (E.D. Pa. 2012) ("[T]he reasonableness of the interest rate is generally a question of fact that requires the presentation of evidence.").

### 2. Selling Shareholders

Plaintiff alleges in Count IV that the Selling Shareholders are parties in interest that knowingly participated in the ESOP Transaction and therefore can be held liable for "appropriate equitable relief" for transactions prohibited under 29 U.S.C. § 1106(a) and Argent's violations of fiduciary duty under 29 U.S.C. § 1104(a)(1)A), (B). (ECF No. 47 at 9) (citing 29 U.S.C. § 1132(a)(3); *Harris*, 530 U.S. at 250-51). These Defendants variously attack the viability of the claims and whether they are "parties in interest" as to the ESOP Transaction.

### a. Viability of Claim as to Violations of § 1104

In *Harris*, the Supreme Court held that the authorization in 29 U.S.C. § 1132(a)(3) for "a 'participant, beneficiary, or fiduciary' of a plan to bring a civil action to obtain 'appropriate equitable relief' to redress violations of ERISA Title I . . . extends to a suit against a nonfiduciary 'party in interest' to a transaction barred by § 406 [29 U.S.C. § 1106]." 430 U.S. at 241. The Management Shareholders insist that the Supreme Court's rationale as to claims under § 406 should not be extended to claims invoking § 404 [29 U.S.C. § 1104].[6] (ECF No. 30 at 11-12 (citing *Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan v. Buth*, 475 F. Supp. 3d 910, 947 (E.D. Wis. 2020), for proposition that "no such cause of action exists")).

The Management Shareholders have provided no logical or textual basis for distinguishing a claimed violation of 29 U.S.C. § 1104 from one under 29 U.S.C. § 1106, and the Court agrees with the Seventh Circuit's supposition that "*Harris*'s reasoning would seem to extend equally to a § 404 [29 U.S.C. § 1104] fiduciary duty claim." *Halperin v. Richards*, 7 F.4th 534, 553 n.3 (7th Cir. 2021). Accordingly, the Management Shareholders' motion to dismiss on this ground is denied.

### b. Status of Selling Shareholders as Parties in Interest

"Congress defined 'party in interest' to encompass those entities that a fiduciary might be inclined to favor at the expense of the plan's beneficiaries." *Harris*, 530 U.S. at 242. In relevant part, ERISA defines "'party in interest' to mean[]":

> as to an employee benefit plan—
>
> (A) any fiduciary . . . , counsel, or employee of such employee benefit plan;

---

[6] The Organizational Shareholders appear to accept that a plan beneficiary could bring a lawsuit for appropriate equitable relief as to a violation of § 404. (ECF No. 27 at 12).

. . .
(C) an employer any of whose employees are covered by such plan;
. . .
(E) an owner, direct or indirect, of 50 percent or more of—(i) the combined voting power of all classes of stock entitled to a vote or the total value of shares of all classes of stock of a corporation;
. . .
(G) a corporation . . . of which (or in which) 50 percent or more of—(i) the combined voting power of all classes of stock entitled to vote or the total value of shares of all classes of stock of such corporation, . . . is owned directly or indirectly by persons described in subparagraph (A) . . . or (E);

[or]

(H) an employee, officer, director (or an individual having powers or responsibilities similar to those of officers or directors), or a 10 percent or more shareholder directly or indirectly, of a person described in subparagraph . . . (C) . . . (E), or (G), or of the employee benefit plan[.]

29 U.S.C. § 1002(14). "The term 'person' means an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization." 29 U.S.C. § 1002(9).

Defendants Krueger and Noesen, both Symbria officers, do not challenge Plaintiff's suggestion that they were parties in interest to the ESOP Transaction (ECF No. 1 ¶ 58); (*see* ECF No. 30 at 12-14 (challenging Plaintiff's allegations as to "knowing participation" of Management Shareholders), and Defendant Callan, the President of a Symbria subsidiary, adopts their arguments.[7] (ECF No. 35, 37, 54, 63.) The Court accordingly assumes, for the purposes of this motion, that the Management Shareholders are parties in interest.

The Organizational Shareholders, though, insist that they are not within the above definition of parties in interest, from whom Plaintiff may seek appropriate equitable relief after *Harris*. Plaintiff asserts that they qualify within subsection (H) because each of the twelve "had the power to appoint a director." (ECF No. 47 at 9-10.)[8] But the definition of "party in interest"

---

[7] At least as to Noesen and Krueger, the reasoning is clear enough, as they appear to fall within the definition of 29 U.S.C. § 1002(14)(C), (H), as "employee[s], officer[s], or director[s] of" "an employer whose employees are covered by" the Plan. Callan does not seem to fit as neatly within that definition, but he does not contest the point.

[8] Plaintiff argues also that the organization-appointed directors "together constituted a controlling block" of the Board. (ECF No. 47 at 10.) Plaintiff, though, provides no facts linking directors appointed by the separate Organizational Shareholders, and, in any event, Plaintiff points to no portion of the "party in interest" statutory definition that would apply. Further, that

does not encompass those who "had the power to appoint a director." 29 U.S.C. § 1002(14)(H). Plaintiff also alleges that these Defendants were "persons" with "powers or responsibilities" akin to those of a director and therefore fall within the above definition. (ECF No. 1 ¶¶ 126-127.) The definition, though, includes "individuals," not "persons" who have such powers and responsibilities, and thus does not include entities like the Organizational Shareholders. After all, given the definition of "person" above, "individual" and "person" cannot be read to be synonymous; "individual" must be read to refer to a natural person. *See Mohamad v. Palestinian Auth.*, 566 U.S. 449, 454-56 (2012) (explaining that the ordinary meaning of "individual," the fact that "federal statutes routinely distinguish between an 'individual' and an organizational entity of some kind," and that the Court "generally seek[s] to respect Congress' decision to use different terms to describe different categories of people or things" contributed to its determination that "individual" as used in the Torture Victim Protection Act of 1991 referred to a natural person). The Organizational Shareholders were not directors, and they are not "individual[s]" with similar powers, and therefore do not fall within the definition of party in interest that Plaintiff invokes. Accordingly, Plaintiff has failed to allege facts plausibly suggesting that the Organizational Shareholders are parties in interest to the ESOP Transaction.[9]

### c. Prohibited Transaction

Given the allegations of a seller-financed stock transaction between the Plan and parties in interest, the complaint alleges a prohibited transaction for the purposes of 29 U.S.C. § 1106(a)(1). *See Lysengen*, 498 F. Supp. 3d at 1020.

### d. Knowing Participation in Prohibited Transaction

"A plan fiduciary that knows the details of a prohibited transaction 'knows or should know' that the transaction is prohibited." *Neil v. Zell*, 753 F. Supp. 2d 724, 732 (N.D. Ill. 2010)). Thus, Plaintiff has sufficiently alleged Argent's knowing participation in the prohibited transaction.

The Management Shareholders argue that Plaintiff failed to plead their knowing participation in the ESOP Transaction. (ECF No. 27 at 11-12; ECF No. 30 at 12-14; ECF No. 37.) The Court agrees with Plaintiff that allegations that "high-ranking Symbria officers" knew or should have known the content of projections, company valuations, and other information provided by Symbria, both because of their positions and their participation in the transaction, are sufficient for this stage of the litigation. Plaintiff need not plead more under the

---

the ESOP Transaction was listed as a "party-in-interest" investment in Symbria's annual filings, (*id.*), does not indicate that the Organizational Shareholders themselves are parties in interest; the Management Shareholders, after all, do not presently contest that they were parties in interest to that transaction.

[9] Plaintiff suggests that one Defendant organization may have owned two Symbria shares, which would constitute ownership of more than ten percent and put that entity within the second half of the definition of party in interest in 29 U.S.C. § 1002(H). (ECF No. 1 ¶ 56.) Plaintiff may, consistent with Federal Rule of Civil Procedure 11, timely amend her complaint to include such allegations against the pertinent Defendant in an amended complaint.

circumstances. *See Lysengen v. Argent Trust Co.*, No. 20-1177, 2022 WL 854818, at *5 (C.D. Ill. Mar. 22, 2022) ("The Court is at least persuaded that Plaintiff has at least pleaded that the Selling Shareholders had constructive knowledge that the transaction was unlawful due to (1) the overvaluation of stock, (2) their direct or indirect involvement of the company as shareholders and family members, and (3) the fact that this benefitted the Selling Shareholders by overpaying them millions of dollars[,]" which are "sufficient facts to survive a motion to dismiss."); *see also Allen*, 835 F.3d at 678 ("ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences."); *De La Torre*, 2021 WL 843453, at *3 (declining to grant motion to dismiss where allegations upon information and belief were related to matters internal to the business and defendants' knowledge); *Hacker*, 2011 WL 5008311, at *5 ("Although the allegation regarding Defendant Herman's involvement in the decision making process is based only on information and belief, the role of a corporate director and officer in the internal decisions of the company is peculiarly within the Defendants' knowledge."). While, again, the factual link appears weaker as to Callan, he has not developed any argument differentiating himself from Noesen and Krueger. The Court therefore declines to dismiss the Management Shareholders on this ground.

‼

The Organizational Shareholders also argue their lack of knowing participation in the ESOP Transaction as parties in interest. Although the Court has determined that the Organizational Shareholders are not parties in interest, for completeness, the Court will address this issue. Unlike the Management Shareholders, who may be presumed to be aware of the true state of the company and its share valuation, the complaint provides no indication that the Organizational Shareholders could or should have had such insider knowledge of the Symbria valuations and projections. Accordingly, Plaintiff has not sufficiently alleged the Organizational Shareholders' knowing participation in a prohibited transaction.

### e. Appropriate Equitable Relief

The Management Shareholders next assert that Plaintiff failed to plead any entitlement to "appropriate equitable relief." (ECF No. 30 at 14.) Courts have held that "equitable restitution (including its disgorgement variant) generally requires specifically identifiable property or its traceable proceeds" and dismissed claims purporting to seek "appropriate equitable relief" when plaintiffs did not identify such property or proceeds. *See Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 660-65 (9th Cir. 2019); *Teets*, 921 F.3d at 1229 ("We conclude summary judgment was properly granted because Mr. Teets failed to identify the particular property in Great-West's possession over which he can 'assert title or right to possession.'") (citation omitted); *but see Fish v. GreatBanc Trust Co.*, 109 F. Supp. 3d 1037, 1042 n.3 (N.D. Ill. 2015) ("Because plaintiffs seek to recover specific funds that were transferred to MFF by the Morgan defendants, this is not a case in which the plaintiffs seek essentially legal relief that is merely cloaked in terms in equity in order to trigger the applicability of § 1132(a)(3).") (citations omitted). Plaintiff has not identified property or proceeds in the manner described in *Depot* and *Teets*. Without reaching the issue of what identification ultimately will be necessary, the Court is disinclined to dismiss Plaintiff's remaining party-in-interest claims at the pleading stage merely because she has not at the outset provided specific identification unlikely to be available to her at this stage. *See Teets*, 921 F.3d at 1227-31 (addressing grant of summary judgment

rather than motion to dismiss). The Management Shareholders, after all, remain in this case both as co-fiduciaries and as parties in interest to a prohibited transaction.

### C. ERISA Breach Through "Void" Indemnification Agreement

ERISA generally declares "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility for any responsibility, obligation, or duty under this part" to "be void as against public policy." 29 U.S.C. § 1110(a). Excepted from that declaration are some types of insurance coverage. *Id.* § 1110(b).

Plaintiff in Count III alleges that Argent's indemnification agreement with Symbria is void under § 1110(a), and any attempt by Argent to enforce the void indemnification provision would violate § 1104(a)(1)(A). (ECF No. 1 ¶¶ 106-07.) Without quoting the language of the agreement, Argent contends that its indemnification provision falls within the insurance exceptions because Argent cannot seek indemnification in the event of a proved fiduciary-duty breach. (ECF No. 33 at 20-21 (citing ECF No. 34-4, Decl. David H. Williams in Supp. Argent Trust Co.'s Mot. Dismiss, Ex. 4, ¶ 6)). Plaintiff retorts that, because the "carve out from Symbria's obligation to indemnify" that Argent references is limited to "a 'claim, damage, expense, liability, or loss . . . [] *attributable to any Indemnitee's breach of fiduciary duty under ERISA, gross negligence, or willful misconduct,*'" Argent may be able to seek indemnification as to "Count I [§ 1106(a)] prohibited transaction claims," for which there is "*per se* liability." (ECF No. 46, Pl.'s Opp'n Def. Argent Trust Co.'s Mot. Dismiss, at 20 (emphasis added)). Argent replies "[i]t is self-evident that a fiduciary's duties under ERISA include a duty not to cause non-exempt prohibited transactions." (ECF No. 57 at 20.)

The Court declines to dismiss Count III at this stage. *See Lysengen*, 498 F. Supp. 3d at 1023 (declining to dismiss identical provision, explaining that, "at best, this provision is ambiguous" and could not be resolved "at this early stage in litigation," and "the indemnification would indirectly place the indemnification burden on the ESOP, which is impermissible under ERISA"); *but see McMaken*, 2019 WL 1468157, at *5 (holding that plaintiff plausibly stated a claim that a different indemnification provision was void under § 1110 "because it potentially provides indemnification for GreatBanc's *per se* violations under ERISA § [1106]" and distinguishing a provision excluding "indemnification for a final judgment resulting from 'the violation of any fiduciary duty imposed under ERISA'" because that would "encompass[] ERISA § [1106] violations").

### CONCLUSION

The motion of Defendant Argent Trust Company to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) [32], joined by all Defendants as to the arguments under Rule 12(b)(1), is denied. The motion of Defendants Jill Krueger and Thomas Noesen, Jr., joined by John R. Callen, to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) [29] [37] is denied. The motion of Defendants Mather Lifeways; Covenant Retirement Communities, Inc.; United Methodist Homes & Services; St. Paul's House & Healthcare Center; Norwood Life Care Foundation; Central Baptist Village; Lifelink Corporation; Norwegian Lutheran Bethesda Home Association; Friendship Senior Options, NFP; Rest Haven Illiana Christian Convalescent

Home; Franciscan Sisters of Chicago Service Corporation; and Lutheran Home and Services for the Aged, Inc. to dismiss under Federal Rule of Civil Procedure 12(b)(6) [26] is granted. The claims against Defendants Mather Lifeways; Covenant Retirement Communities, Inc.; United Methodist Homes & Services; St. Paul's House & Healthcare Center; Norwood Life Care Foundation; Central Baptist Village; Lifelink Corporation; Norwegian Lutheran Bethesda Home Association; Friendship Senior Options, NFP; Rest Haven Illiana Christian Convalescent Home; Franciscan Sisters of Chicago Service Corporation; and Lutheran Home and Services for the Aged, Inc. are dismissed without prejudice. The remaining Defendants shall answer the complaint by August 31, 2022.

**DATE:** August 10, 2022

**Hon. Ronald A. Guzmán**
**United States District Judge**