UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CAROLYN PLACHT, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 21 C 5783 ) ) Judge Sara L. Ellis |
| ARGENT TRUST COMPANY, | ) ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Carolyn Placht, a participant in Symbria Inc.'s Employee Stock Ownership Plan (the "Plan"), filed this class action lawsuit against Defendant Argent Trust Company ("Argent"), the Plan's Trustee, under the Employee Retirement Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*. Placht alleges that Argent violated its fiduciary duties to Plan participants with respect to the October 31, 2015 purchase by the Plan of all issued and outstanding shares of Symbria from Symbria's former shareholders (the "ESOP Transaction"). Specifically, Placht contends that the ESOP Transaction involved prohibited transactions under ERISA § 406(a), 29 U.S.C. § 1106(a), including the purchase of stocks from and acceptance of loans from parties in interest, and that Argent breached its fiduciary duties under ERISA § 404(a)(1), 29 U.S.C. § 1104(a), by failing to independently and thoroughly investigate the proper valuation of the Symbria stock price. Placht also seeks a declaration invalidating Argent's indemnification agreement with Symbria under ERISA § 410(a), 29 U.S.C. § 1110(a). The court certified a class defined as "[a]ll participants in the Symbria, Inc. Employee Stock Ownership Plan and the beneficiaries of such participants as of the date of the October 31, 2015 ESOP Transaction or anytime thereafter." Doc. 118.

The parties now move for summary judgment.[1] Placht seeks summary judgment that she has proved every element of her § 406(a) claims, and Argent asks for summary judgment on all of Placht's claims and its § 408 affirmative defenses to her § 406(a) claims. Although Placht has proved every element of her § 406(a) claims, removing the need to provide additional proof of these elements at trial, the § 406(a) claims remain subject to Argent's § 408 affirmative defenses. Questions of fact remain as to the adequate consideration exemption and whether Argent acted prudently in investigating and agreeing to the ESOP Transaction. While those questions must proceed to trial, Argent has shown it is entitled to judgment on Placht's claims related to the loan that funded the ESOP Transaction, Argent's alleged breach of the duty of loyalty, and the validity of the indemnification agreement under ERISA.

## BACKGROUND

### I. Argent's Motion to Strike

The Court first addresses Argent's motion to strike Placht's separate statement of disputed material facts. Argent argues that by filing a separate statement of disputed material facts instead of including such statements in her response, Placht violated this Court's summary judgment procedures. Indeed, this Court's summary judgment procedures differ from Local Rule 56.1, in that this Court requires the parties to submit a joint statement of undisputed facts and the party opposing summary judgment to submit additional facts it contends demonstrate a genuine issue of material fact in its response, not in a separate statement. Judge Sara L. Ellis, Case Procedures, Summary Judgment Practice, https://www.ilnd.uscourts.gov/judge-

---

[1] The parties filed some of their briefs and exhibits under seal, also providing redacted versions. If the Court discusses information the parties have deemed confidential, it does so because it is necessary to explain the path of its reasoning. *See In re Specht*, 622 F.3d 697, 701 (7th Cir. 2010) ("Documents that affect the disposition of federal litigation are presumptively open to public view, even if the litigants strongly prefer secrecy, unless a statute, rule, or privilege justifies confidentiality."); *Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000) (explaining that a judge's "opinions and orders belong in the public domain").

info.aspx?VyU/OurKKJRDT+FUM5tZmA==; *see Sweatt v. Union Pac. R.R. Co.*, 796 F.3d 701, 711–12 (7th Cir. 2015) (affirming this Court's summary judgment procedures).

By using a separate statement to set out her disputed facts, Placht technically violated the Court's summary judgment procedures. But the Court nonetheless accepts Placht's separate filing, given that Argent responded to these additional allegedly disputed facts in its reply brief and cannot show any prejudice arising from Placht's use of a separate statement and then incorporating facts from that statement into her response. The Court notes, however, that many of the statements in Placht's separate statement of disputed facts, when stripped of argument, do not appear contested and so should have been included in the parties' joint statement. *See* Judge Ellis, Summary Judgment Practice ("The parties may not file . . . separate statements of undisputed facts."); *Chicago Studio Rental, Inc. v. Ill. Dep't of Com.*, 940 F.3d 971, 981–82 (7th Cir. 2019) (this Court did not abuse its discretion in striking a party's statement of additional facts for noncompliance where the additional facts were undisputed and could have been included in the parties' joint statement of undisputed facts). While the Court overlooks these violations in the interest of resolving the parties' arguments on their merits, it expect that the parties will fully comply with the Court's procedures going forward.

## II. Factual Overview

The parties have provided the Court with 200 statements of undisputed fact, spanning 121 pages, as well as a nine-page stipulation of facts and conclusions of law for purposes of Placht's motion for partial summary judgment. Placht also submitted twenty-three statements of allegedly disputed facts spanning an additional eight pages, and the parties' attached exhibits total approximately 7,500 pages. Despite the apparent agreement of the parties on the majority of the relevant facts, the sheer number of undisputed facts does not necessarily indicate the

propriety of summary judgment as undisputed facts, when considered against each other, can still create disputes of fact. That is the case here, where the voluminous record and contrary expert opinions should have suggested to the parties that summary judgment would be a mostly futile exercise. Because the Court, and not a jury, is the ultimate trier of fact in this case, the Court questions whether proceeding straight to a bench trial would have been a better use of the parties' and Court's time and resources. Nonetheless, the Court soldiers on to decide the motions before it. But in doing so, instead of providing an extensive recitation of the facts of the case here, the Court merely provides a high-level overview and addresses specific issues relevant to resolution of the motions in the analysis section.

Symbria, a healthcare services company headquartered in Warrenville, Illinois, provides on-site rehabilitation therapies, prescription drug management, wellness programs, and survey analytics to senior care organizations. Symbria is privately held with no shares readily tradable on an established securities market. Before the ESOP Transaction, twelve non-profit shareholders (the "Selling Shareholders"), including Franciscan Sisters of Chicago Service Corporation and Smith Senior, owned Symbria. Smith Senior sold all of its Symbria stock to Symbria executives Jill Krueger, Thomas Noesen, and John Callen on the day of the ESOP Transaction, making Krueger, Noesen, and Callen Selling Shareholders as well. At the time, Krueger served as Symbria's President and Chief Executive Officer, Noesen served as Symbria's Chief Financial Officer, and Callen served as President of Alliance Rehab, Inc., one of Symbria's subsidiaries.

On April 1, 2015, Symbria created the Plan, which Symbria sponsors and in which eligible employees participate. Symbria engaged Argent to serve as the trustee for the Plan with respect to the contemplated sale of Symbria stock to the Plan. Argent had responsibility for

determining Symbria's fair market value ("FMV"), negotiating the terms of the sale on behalf of the Plan, and deciding whether to approve the transaction. Symbria engaged Stout Risius Ross ("SRR") as its financial advisor and McDermott Will & Emery ("MWE") as its legal counsel. After conducting due diligence and negotiations concerning the terms of the sale, the Plan purchased 100 percent of Symbria's common stock for $66,500,000, or $47,500 per share, on October 31, 2015 in the ESOP Transaction. The total consideration was subject to a clawback provision, under which the amount would be reduced by up to $7 million if Symbria did not meet certain financial projections. The Plan paid $22,140,090 in cash to the Selling Shareholders for the Symbria stock. The Plan financed this amount through a loan from Symbria at a 2.64% interest rate and payable in forty annual installments (the "Symbria Loan"). The Plan also executed an "ESOP-Seller Note," promising to pay the Selling Shareholders an additional $44,359,910 in the future, subject to the same terms as the Symbria Loan. The Symbria Loan and the ESOP-Seller Note were then merged into a single $66.5 million note between the Plan and Symbria, secured by all shares the Plan purchased (the "ESOP Loan").

## LEGAL STANDARD

Summary judgment obviates the need for a trial where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To determine whether a genuine dispute of material fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, documents, answers to interrogatories, admissions, stipulations, and affidavits or declarations that are part of the record. Fed. R. Civ. P. 56(c)(1); *A.V. Consultants, Inc. v. Barnes*, 978 F.2d 996, 999 (7th Cir. 1992). The party seeking summary judgment bears the initial burden of demonstrating that no genuine dispute of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Bunn v. Fed.*

*Deposit Ins. Corp. for Valley Bank Ill.*, 908 F.3d 290, 295 (7th Cir. 2018). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine dispute for trial. Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 324; *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627 (7th Cir. 2014). The Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Wehrle v. Cincinnati Ins. Co.*, 719 F.3d 840, 842 (7th Cir. 2013). However, a bare contention by the non-moving party that an issue of fact exists does not create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), and the non-moving party is "only entitled to the benefit of inferences supported by admissible evidence, not those 'supported by only speculation or conjecture,'" *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (citation omitted).

## ANALYSIS

### I. Placht's Motion for Partial Summary Judgment

"Responding to deficiencies in prior law regulating transactions by plan fiduciaries, Congress enacted ERISA § 406(a)(1), which supplements the fiduciary's general duty of loyalty to the plan's beneficiaries, § 404(a), by categorically barring certain transactions deemed 'likely to injure the pension plan.'" *Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 241–42 (2000) (quoting *Comm'r v. Keystone Consol. Indus., Inc.*, 508 U.S. 152, 160 (1993)); *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 674 (7th Cir. 2016) ("ERISA identifies a number of transactions that are flatly prohibited between a plan and a party in interest, or a plan and a fiduciary."). Although § 406(a)(1) sets forth categorical prohibitions, § 408, 29 U.S.C. § 1108, provides certain exemptions to these prohibitions. *Harris Tr.*, 530 U.S. at 242. Placht

has the burden to prove the § 406 prohibited transaction, after which Argent takes on the burden of proving that the transaction falls within a § 408 exemption. *Allen*, 835 F.3d at 676.

Placht moves for summary judgment only as to whether Argent committed a prohibited transaction under § 406, acknowledging that such a finding would not conclusively resolve her claims because a § 408 exemption may still apply. Initially, Argent contends that Rule 56 does not allow for such piecemeal adjudication. But as the notes to Rule 56 explain, "summary judgment may be requested not only as to an entire case but also as to a claim, defense, or part of a claim or defense." Fed. R. Civ. P. 56(c) advisory committee's notes to 2010 amendment. Thus, Placht's request for partial summary judgment, which requests a ruling that she has established the elements of her § 406 claims, subject to Argent demonstrating a § 408 exemption applies, is proper.

> Subject to the § 408 exemptions, as relevant to this case, § 406 provides:
>
>> A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect—
>>
>> (A) sale or exchange, or leasing, of any property between the plan and a party in interest;
>>
>> (B) lending of money or other extension of credit between the plan and a party in interest; . . . [or]
>>
>> (D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan[.]

29 U.S.C. § 1106(a). Argent does not dispute that, pursuant to the parties' stipulated facts, Placht has set forth the required elements for her § 406(a)(1)(A) and (a)(1)(B) claims. Specifically, the parties stipulate that on the date of the ESOP Transaction, Argent served as a fiduciary under ERISA for the ESOP Transaction and that Krueger, Noesen, Callen, Franciscan Sisters, and Symbria qualified as "parties in interest" with respect to the Plan under ERISA. The

7

parties further stipulate that the ESOP Transaction constituted a "direct or indirect sale or exchange, or leasing, of any property between the plan and a party in interest" under § 406(a)(1)(A), in which Argent caused the Plan to engage. The parties also stipulate that the ESOP Loan constituted "a direct or indirect lending of money or other extension of credit between the plan and a party in interest" under § 406(a)(1)(B).

But Argent disagrees that Placht can show a violation of § 406(a)(1)(D). Section 406(a)(1)(D) prohibits both the "transfer to . . . a party in interest," as well as "the use by or for the benefit of a party in interest," of plan assets. 29 U.S.C. § 1106(a)(1)(D). The parties stipulate that the cash component of the ESOP Transaction transferred "assets of the plan" to a "party in interest" under ERISA § 406(a)(1)(D). Argent, however, contends that § 406(a)(1)(D) also requires Argent to have subjectively intended to benefit a party in interest through the transfer. *See Leigh v. Engle*, 727 F.2d 113, 126 (7th Cir. 1984) ("We read [§ 406(a)(1)(D)] dealing with the use of plan assets for the benefit of 'parties in interest' . . . as a gloss on the duty of loyalty required by section 404. . . . The broad provisions of section 406(a)(1)(D) . . . require courts to look carefully at the transaction to decide whether plan assets were used 'by or for the benefit of' a party in interest, or whether a fiduciary dealt with the plan assets 'in his own interest.'"); *see also Sweda v. Univ. of Pa.*, 923 F.3d 320, 339–40 (3d Cir. 2019) (to state a claim under § 1106(a)(1)(D), a plaintiff must allege the fiduciary had subjective intent to benefit a party in interest by the use or transfer of plan assets); *Jordan v. Mich. Conf. of Teamsters Welfare Fund*, 207 F.3d 854, 860–61 (6th Cir. 2000) (adopting subjecting intent requirement for § 406(a)(1)(D)).

Respectfully, the Court disagrees with Argent's broad reading of *Leigh*, particularly given *Leigh*'s instruction that § 406(a)(1)(D) "should be read broadly in light of Congress'

8

concern with the welfare of plan beneficiaries." *Leigh*, 727 F.2d at 126.  Additionally, even in *Leigh*, the Seventh Circuit spoke about looking to "objective circumstances" to determine whether "plan assets were used 'by or the benefit of' a party in interest," *id.*, further undermining the existence of a subjective intent requirement in this Circuit.[2]  Rejecting a subjective intent requirement also comports with Congress' intent for § 406 to set forth *per se* violations, for which "the parties' intent should have no bearing as to whether a violation occurred." *Chao v. Hall Holding Co.*, 285 F.3d 415, 441 n.12 (6th Cir. 2002) (collecting cases and authorities that call into question *Jordan*'s subjective intent requirement for § 406(a)(1)(D)).  Therefore, the Court rejects Argent's arguments that Placht's § 406(a)(1)(D) claim involving the transfer of plan assets to a party in interest requires a showing of subjective intent.  Because § 406(a)(1)(D) does not impose such a requirement, the parties' stipulated facts establish a § 406(a)(1)(D) violation, subject to the applicability of one of § 408's exemptions.

The Court therefore grants Placht's motion for partial summary judgment, meaning that Placht will not have to adduce evidence at trial that the ESOP transaction violated § 406.  As Placht recognizes, this does not mean that she has prevailed on this claim, as the Court must still address Argent's § 408 defenses.

---

[2] The Court also does not find Argent's reliance on out-of-circuit cases imposing a subjective intent requirement persuasive.  *Sweda* stated that Third Circuit precedent required pleading subjective intent for both the use and transfer of plan assets, citing to *Reich v. Compton*, 57 F.3d 270, 279 (3d Cir. 1995). *Sweda*, 923 F.3d at 339.  *Jordan* also relied on *Reich* for the same subjective intent requirement. *Jordan*, 207 F.3d at 860–61.  But the applicability of the requirement to both the transfer and use components of § 406(a)(1)(D) does not find support in *Reich*, which addressed only the "use of plan assets 'for the benefit of' a party in interest" and differentiated the "use" prohibition from § 406(a)(1)(D)'s prohibition of "the transfer of plan assets to a party in interest." *Reich*, 57 F.3d at 278–79.  Because many of the cases that categorically impose a subjective intent requirement on § 406(a)(1)(D) claims rely on *Sweda*, *Jordan*, and *Reich* despite the fact that *Reich* did not consider whether the same reasoning for the requirement applied to the "transfer of plan assets to a party in interest" language in the statute, the Court finds these cases less persuasive.

## II. Argent's Motion for Summary Judgment

Argent moves for summary judgment on all of Placht's claims. The analysis concerning the breach of fiduciary duty claims and the applicability of the § 408 exemptions overlaps in many regards, and so the Court considers them together to the extent doing so avoids repetition. After considering these arguments, the Court turns to Placht's indemnification claim.

### A. ESOP Loan

First, the Court considers Argent's argument that Placht cannot prevail on her breach of fiduciary duty or § 406(a)(1)(B) claims with respect to the ESOP Loan because the ESOP Loan satisfies the exemption in § 408(b)(3) that it be "primarily for the benefit of participants" and "at an interest rate which is not in excess of a reasonable rate." 29 U.S.C. § 1108(b)(3). Placht makes no arguments as to the ESOP Loan or the exemption provided by § 408(b)(3), and so the Court finds that she has effectively conceded the exemption's applicability. *See Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011) (the court is not "obliged to research and construct legal arguments for parties, especially when they are represented by counsel"); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."). The Court thus grants judgment for Argent on Placht's claims related to the ESOP Loan.

### B. Adequate Consideration for the ESOP Transaction

The parties treat the inquiries for Placht's general breach of the duty of prudence claim and the § 408(e) exemption together, so the Court does the same. Argent argues that Placht cannot prevail on either her breach of the duty of prudence or remaining § 406 claims because

10

the Plan purchased the Symbria stock for "adequate consideration." 29 U.S.C. § 1108(e).[3] "Whether an ERISA fiduciary has acted prudently requires consideration of both the substantive reasonableness of the fiduciary's actions and the procedures by which the fiduciary made its decision," with the Court instructed to consider "both the process used by the fiduciaries to reach their decision as well as an evaluation of the merits." *Fish v. GreatBanc Tr. Co.*, 749 F.3d 671, 680 (7th Cir. 2014) (citation omitted). And with respect to the § 408(e) exemption, ERISA defines "adequate consideration" as "the fair market value of the asset as determined in good faith by the trustee or named fiduciary." 29 U.S.C. § 1002(18)(B). Because Symbria's stock was privately held, its FMV is "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts." *Eyler v. Comm'r*, 88 F.3d 445, 451 (7th Cir. 1996) (citation omitted). But the price itself is not the focus of the adequate consideration inquiry; rather, "ESOP fiduciaries will carry the burden of proving that adequate consideration was paid 'by showing that they arrived at their determination of fair market value by way of a prudent investigation in the circumstances then prevailing.'" *Id.* at 455 (citation omitted); *see also Henry v. Champlain Enters., Inc.*, 445 F.3d 610, 619 (2d Cir. 2006) ("The role of courts in reviewing the adequacy of consideration in an ERISA case is to determine whether the fiduciary can show that the price paid represented a good faith determination of the fair market value of the asset, 'not to redetermine the appropriate amount for itself *de novo*.'" (citation omitted)). The Court thus looks at the same factors in determining whether the § 408(e) exemption applies and whether Argent acted prudently. *Fish*, 749 F.3d at 680.

---

[3] Section 408(e) also requires the sale to be of "qualifying employer securities," the trustee not to charge a commission, and the plan to qualify as "an eligible individual account plan." 29 U.S.C. § 1108(e). The parties do not appear to dispute that the ESOP Transaction meets these additional requirements.

11

Argent argues that Placht's "claims fail because the undisputed facts show that Argent used a thorough and prudent process for investigating the ESOP Transaction and determining Symbria's FMV, and the stock purchase price was fully supported by SRR's FMV analysis, which aligned with other contemporaneous indications of Symbria's FMV from independent valuation professionals." Doc. 143 at 12. Argent maintains that not only did it hire SRR and MWE to advise it on the financial and legal aspects of the transaction, it also independently assessed the merits of the ESOP Transaction and successfully negotiated a reduction in the purchase price along with a clawback. *Cf. Keach v. U.S. Tr. Co.*, 419 F.3d 626, 636–37 (7th Cir. 2005) ("Although securing an independent assessment from a financial advisor or legal counsel is evidence of a thorough investigation, it is not a complete defense against a charge of imprudence." (citation omitted) (internal quotation marks omitted)).

Placht, however, contends that disputes of fact exist, pointing to her experts' criticisms of SRR's valuation analysis and other shortfalls in Argent's review of SRR and MWE's analyses. Among other things, Placht contends that SRR's valuation improperly incorporated a control premium despite the fact that the Selling Shareholders retained control over Symbria because they retained the ability to nominate the majority of Symbria's board of directors. Placht also has presented evidence suggesting that Symbria's management overinflated the revenue projections on which Argent and its advisors relied and that other allegedly independent evaluations rendered before the ESOP Transaction concluded also had flaws and were actually rendered by interested parties. Placht's experts also criticize SRR's use of a 4% residual growth rate in its discounted cash flow analysis, arguing that it was too high and again overinflated Symbria's value. Finally, Placht presents facts that could call into question whether Argent conducted only a cursory evaluation of the ESOP Transaction, failing to verify or even consider

12

issues that Placht's experts indicate Argent should have questioned. Incorporating these criticisms into his analysis, Placht's expert found Symbria's value fell well-below the sale price.

Argent couches Placht's experts' criticisms as "unsupported by the factual record or—at most—represent[ing] a mere difference of professional opinion." Doc. 143 at 16. Argent did not, however, challenge any of Placht's experts' opinions under Federal Rule of Evidence 702, and so these opinions create disputed issues of fact. *See Scalia v. Reliance Tr. Co.*, No. 17-cv-4540, 2021 WL 795270, at *28 (D. Minn. Mar. 2, 2021) ("[I]n the face of conflicting expert testimony on the duty of prudence in this case, disputed issues of material fact preclude the entry of summary judgment."). In other words, the Court cannot find the experts' criticisms manufactured and irrelevant to the questions at hand at this stage, particularly given that other courts have considered similar criticisms in determining whether a breach of the duty of prudence occurred and the adequate consideration exemption applied. *See, e.g.*, *Brundle v. Wilmington Tr., N.A.*, 919 F.3d 763, 774–79 (4th Cir. 2019) (considering failure to probe reliability of management's projections, failure to investigate appropriateness of control premium, and rushed diligence process relevant to a breach of the duty of prudence claim); *cf. Birse v. CenturyLink, Inc.*, No. 17-cv-02872, 2020 WL 1062902, at *6–7 (D. Colo. Mar. 5, 2020) (dismissing expert's opinion that the challenged conduct constituted a breach of fiduciary duties where the expert's opinion sought to impose standards above what ERISA required). While Argent makes potentially valid arguments about why Placht's criticisms of Argent's process in evaluating the ESOP Transaction do not carry the day, the Court cannot make credibility determinations or weigh the evidence at the summary judgment stage. *See Scalia*, 2021 WL 795270, at *34 (denying summary judgment where, among other things, the existence of "offsetting factors . . . would require the Court to weigh the evidence and consider whether a

13

hypothetical prudent fiduciary would have acted differently in the face of such changes"). Because factual questions exist as to whether Argent acted prudently and ensured that the Plan paid no more than "adequate consideration" for the Symbria stock, Placht's claims and Argent's defenses with respect to the ESOP Transaction must proceed to trial. *See Est. of Godley v. Comm'r*, 286 F.3d 210, 215 (4th Cir. 2002) ("[T]he question of whether to apply a minority discount is factual in nature."); *Est. of Ford v. Comm'r*, 53 F.3d 924, 926 (8th Cir. 1995) ("The issues of valuation and applicability of marketability and minority interest discounts are factual questions.").

### C. Duty of Loyalty

ERISA's duty of loyalty requires a plan fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries," with "the exclusive purpose" of "providing benefits to participants and their beneficiaries" and "defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A). Argent argues that Placht has no evidence that Argent breached its duty of loyalty and approved the ESOP Transaction to further its own interests. *See Albert v. Oshkosh Corp.*, 47 F.4th 570, 583 (7th Cir. 2022) (noting the lack of "allegations that Oshkosh engaged in self-dealing at the expense of the Plan"). Indeed, while referring generally to "evidence that Argent failed to act 'with an eye single to the interests of the Plan and its participants," Placht fails to provide any evidence that would suggest that Argent acted to further its own interest or had any other type of conflict of interest that would support a breach of fiduciary duty claim.[4] *Cf. Chao*, 285 F.3d at 434 (duty of loyalty breached where

---

[4] In a footnote, Placht notes that evidence exists that "Argent could 'expect future business referrals' from Verit if it did not negotiate too hard" and that "Argent would only receive ongoing trustee fees if the deal closed." Doc. 150 at 18 n.15. The Court recognizes that a district court in Arizona found such considerations created a question of fact on a similar breach of the duty of loyalty claim. *See Walsh v. Reliance Tr. Co.*, No. CV-19-03178, 2023 WL 1966921, at *22–23 (D. Ariz. Feb. 13, 2023). But here,

14

fiduciary testified that she was more concerned about getting an interest rate favorable to another entity, not the ESOP participants). Without any such evidence, Placht cannot proceed further on her breach of the duty of loyalty claim.[5]

### D. Indemnification

Finally, the Court turns to Placht's indemnification claim. ERISA § 410 declares void against public policy "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility for any responsibility, obligation, or duty under" ERISA. 29 U.S.C. § 1110(a). Placht asks the Court to declare Argent's indemnification agreement with Symbria void under § 410 to the extent that the agreement allows for indemnification for losses from a breach of fiduciary duty or prohibited transactions.

Argent and Symbria's indemnification agreement provides in relevant part:

> Recognizing that transactions of the type contemplated in this letter agreement can result in government investigations, litigation, or other proceedings, the COMPANY agrees to indemnify and hold ARGENT and its directors, employees, and officers (individually an "Indemnitee" and collectively the "Indemnitees") harmless against and from all claims, damages, expenses, fees, liabilities, and losses to which any or all of the Indemnitees may become subject under any applicable federal or state law or otherwise relating to the Proposed Transaction or ARGENT's duties as ESOP trustee (including all events that occurred prior to ARGENT becoming the trustee under the ESOP). The COMPANY's agreement to indemnify and hold the Indemnitees harmless shall not apply to any claim, damage, expense, liability, or loss that is attributable to any Indemnitee's breach of fiduciary duty under ERISA, gross negligence, or willful misconduct.

---

the evidence Placht cites does not support her characterization of the record or suggest any conflicts of interest.

[5] Placht questions Argent's request for summary judgment on this aspect of her fiduciary duty claim, quoting the *Walsh* court's commentary that the dispute was not "worth litigating at summary judgment" because "the same relief will be available regardless of which subspecies of fiduciary breach the [plaintiff] establishes." *Walsh*, 2023 WL 1966921, at *22. But the Court finds that, just as with Placht's request for summary judgment on the elements of her § 406(a) claims, considering whether a breach of loyalty claim can proceed past summary judgment will streamline at least the legal issues for trial.

Doc. 144 ¶ 4.  Argent argues that because the indemnification agreement explicitly provides that it does not apply "to any claim, damage, expense, liability, or loss that is attributable to any Indemnitee's breach of fiduciary duty under ERISA, gross negligence, or willful misconduct," *id.*, it does not violate ERISA.  Placht reprises the argument she made at the motion to dismiss stage that the carveout may not preclude indemnification for violation of § 406(a) because that section imposes *per se* liability on a fiduciary and does not fall under § 404's fiduciary duties provision.  *See* Doc. 71 at 18 (declining to dismiss indemnification claim at the motion to dismiss stage).

Upon further review, the Court does not find merit in Placht's argument.  The indemnification agreement does not allow for indemnification for violations of the "breach of fiduciary duty under ERISA," Doc. 144 ¶ 4, which "unambiguously encompasses ERISA § 406 violations, as the prohibited transactions listed therein are a species of fiduciary duty breaches under ERISA," *McMaken v. GreatBanc Tr. Co.*, No. 17-cv-04983, 2019 WL 1468157, at *5 (N.D. Ill. Apr. 3, 2019); *see also Leigh*, 727 F.3d at 123 ("The *per se* rules of section 406 make much simpler the enforcement of ERISA's more general fiduciary obligations.").  In fact, Argent agrees that "the agreement on its face does not permit indemnification in circumstances ERISA prohibits," acknowledging that it is not entitled to indemnification from Symbria if the Court ultimately finds a § 406(a) violation.  Doc. 143 at 19–20.  Therefore, because the indemnification agreement does not violate ERISA, the Court enters judgment for Argent on this claim.

## CONCLUSION

For the foregoing reasons, the Court grants Placht's motion for partial summary judgment [139] and grants in part and denies in part Argent's motion for summary judgment [142].  The Court denies Argent's motion to strike [157].  The Court finds that Placht has established the

elements of her § 406 claim, subject to the applicability of any § 408 exemptions as determined at trial. The Court enters judgment for Argent on Placht's breach of the duty of loyalty claim, her claims based on the ESOP Loan, and her indemnification claim.

Dated: March 25, 2024

_____
SARA L. ELLIS
United States District Judge