UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| CAROLYN PLACHT, on behalf of the Symbria Inc. Employee Stock Ownership Plan and on behalf of a class of all other persons similarly situated, | | |
| | Plaintiff, | Case No. 1:21-cv-05783 |
| v. | | Hon. Sunil R. Harjani |
| ARGENT TRUST COMPANY, | | |
| | Defendant. | |

PLAINTIFF'S UNOPPOSED MOTION AND INCORPORATED
MEMORANDUM OF LAW FOR PRELIMINARY APPROVAL OF SETTLEMENT

**TABLE OF CONTENTS**

I.     INTRODUCTION ....................................................................................................... 1

II.    FACTUAL AND PROCEDURAL BACKGROUND...................................................... 2

    A.   Background ......................................................................................................... 2

    B.   Discovery ............................................................................................................ 3

    C.   Motion Practice ................................................................................................... 4

    D.   The Settling Parties' Settlement Efforts ............................................................. 4

III.   SUMMARY OF THE PROPOSED SETTLEMENT TERMS ........................................ 5

    A.   Benefits to the Class............................................................................................ 5

    B.   Notice and Administration................................................................................... 6

    C.   Class Representative Award to the Named Plaintiff and Attorneys' Fees and Costs......... 6

    D.   Release of Claims ............................................................................................... 7

    E.   Notice and Proposed Schedule of Events .......................................................... 7

IV.    ARGUMENT .............................................................................................................. 8

    A.   The Court Should Grant Preliminary Approval of the Settlement Because It Is Fair,
         Reasonable, and Adequate. ................................................................................. 8

      1.  The Plan participants are adequately represented, and competent counsel opines that the
          Settlement is fair. ........................................................................................ 10

      2.  The negotiations were at arm's length. ...................................................... 11

      3.  The relief provided to the Plan participants is adequate. ............................ 12

      4.  The proposal treats Class Members equitably relative to each other............................ 15

V. CONCLUSION.............................................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Products v. Windsor*,
521 U.S. 591 (1997)...................................................................................................10

*In re AT&T Mobility Wireless Data Services Sales Litig.*,
270 F.R.D. 330 (N.D. Ill. 2010)...............................................................................10

*E.E.O.C. v. Hiram Walker & Sons, Inc.*,
768 F.2d 884 (7th Cir. 1985) ...................................................................................14

*Gautreaux v. Pierce*,
690 F.2d 616 (7th Cir. 1982) ................................................................................8, 10

*In re General Motors Corp. Engine Interchange Litig.*,
594 F.2d 1106 (7th Cir. 1979) ..................................................................................13

*Linman v. Marten Transport, Ltd.*,
No. 22-204, 2024 WL 2974831 (W.D. Wis. June 13, 2024)...................................10

*In re Nat'l Collegiate Athletic Assoc. Student-Athlete Concussion Injury Litig.*,
332 F.R.D. 202 (N.D. Ill. 2019).................................................................................9

*Roberts v. Graphic Packaging Int'l, LLC*,
No. 3:21-750, 2024 WL 3373780 (S.D. Ill. July 11, 2024)....................................10

*Snyder v. Ocwen Loan Servicing, LLC*,
No. 14 C 8461, 2019 WL 2103379 (N.D. Ill. May 14, 2019) ................................10

*In re TikTok, Inc. Consumer Privacy Litig.*,
565 F. Supp. 3d 1076 (N.D. Ill. 2021) ..................................................................8, 9

**Statutes**

28 U.S.C. §§ 1711–1715...............................................................................................6, 8

29 U.S.C. § 1000, *et seq.*................................................................................................1

29 U.S.C. § 1104 ...............................................................................................................2

29 U.S.C. § 1106................................................................................................................2

**Federal Rules of Civil Procedure**

Rule 12(b)(6)......................................................................................................................2

Rule 23(e)............................................................................................................................8, 9

Rule 23(e)(1)......................................................................................................................8, 15

Rule 23(e)(2).....................................................................................................9, 10, 11, 14, 15

Rule 23(e)(3)..........................................................................................................................9

Rule 41...................................................................................................................................2

Plaintiff Carolyn Placht ("Plaintiff"), individually and as a representative of the Class, hereby moves for an order preliminarily approving a class action settlement agreement between Plaintiff and Defendant Argent Trust Company ("Defendant" or "Argent" and, together with Plaintiff, the "Settling Parties"); approving the Settlement Notice to the Class; and setting a date for a Fairness Hearing.[1]

## I.      INTRODUCTION

Subject to the Court's approval, the Settling Parties have entered an agreement to settle this Employee Retirement Income Security Act, 29 U.S.C. § 1000, *et seq.*, ("ERISA") class action (the "Class Action"). The Settling Parties have agreed to resolve all matters in controversy between them in the Class Action for the sum total of $5,900,000. No portion of the settlement payment is a tax or penalty under ERISA or the Internal Revenue Code of 1986 as amended. Should the Court grant approval, every eligible Class Member will receive their portion of the Net Settlement Amount[2] according to a pro rata Plan of Allocation.

The proposed Settlement satisfies all the criteria for preliminary approval and provides an excellent result for the Class. For these reasons, discussed in more detail below, Plaintiff requests that the Court: (a) grant preliminary approval of the Settlement Agreement, attached to the Declaration of Gregory Porter ("Porter Decl.") as Exhibit A; (b) approve the proposed Settlement Notice (attached as Exhibit 1 to the Settlement Agreement); (c) appoint Simpluris as the Settlement

---

[1] Unless otherwise defined, all capitalized terms herein shall have the same meaning as set forth in the Settlement Agreement filed herewith.

[2] The Net Settlement Amount consists of the Gross Settlement Amount, plus accrued interest, minus any Administrative Expenses, Court-approved Attorney's Fees and Costs, and any Class Representative Award.

Administrator and Escrow Agent; (d) approve the Plan of Allocation (attached as Exhibit 2 to the Settlement Agreement); and (e) set a date for a Fairness Hearing.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Background

This is a class action brought on behalf of participants and beneficiaries of the Symbria Inc. Employee Stock Ownership Plan ("Plan") alleging that Defendant, in its capacity as Trustee, violated ERISA in connection with the October 31, 2015 purchase by the Plan of 100% of the issued and outstanding shares of Symbria Inc. ("Symbria") common stock for $66,500,000 (the "ESOP Transaction"). The Complaint was also brought against selling shareholders Jill Krueger, Thomas Noesen, Jr., John R. Callen, Central Baptist Village, Covenant Retirement Communities, Inc., Franciscan Sisters of Chicago Service Corporation, LifeLink Corporation, Lutheran Home and Services for the Aged, Inc., Mather Lifeways, Norwegian Lutheran Bethesda Home Association, Norwood Life Care Foundation, Friendship Senior Options, NFP, Rest Haven Illiana Christian Convalescent Home, St. Paul's House & Healthcare Center, and United Methodist Homes & Services (the "Selling Shareholders"). All of the Selling Shareholders were dismissed from the case either after the Court granted their Rule 12(b)(6) motion or pursuant to a Rule 41 Stipulation of Dismissal.

Plaintiff alleged that Defendant violated ERISA §§ 404 and 406, 29 U.S.C. §§ 1104 and 1106, by, *inter alia*, causing the Plan to borrow money from a party in interest; causing the Plan to acquire Symbria shares from the Selling Shareholders; acting for the benefit of Symbria and its Selling Shareholders by approving a purchase price for Symbria stock that exceeded its fair market value; and breaching the fiduciary duties that it owed to the Plan. Defendant has at all times denied all of these allegations, denied any wrongdoing or liability, and vigorously defended itself in this

2

Class Action. Defendant denies that it violated the law or engaged in wrongdoing of any kind in connection with the ESOP Transaction or this Class Action.

**B. Discovery**

The Settling Parties have diligently litigated this Class Action and engaged in robust discovery. They propounded and responded to written discovery. Over 21,000 documents were produced by Symbria, Defendant, and various third parties in the Class Action. Plaintiff received and reviewed, *inter alia*: presentations prepared by Symbria's advisors that were provided to Symbria and Defendant; discussions among Defendant and its advisors related to the ESOP Transaction, including discussions about the terms of the transaction, Symbria's valuation, and ongoing negotiations; transaction documents containing the terms of the ESOP Transaction; opinion letters provided by Defendant's advisors; valuation reports prepared by Defendant's financial advisor; diligence reports prepared by Defendant's legal advisor; handwritten notes taken by Defendant's employees during the ESOP Transaction process; and minutes from meetings of Defendant's ESOP Committee related to the ESOP Transaction. *See* Declaration of Gregory Porter, attached hereto as Exhibit 1, ("Porter Decl."), ¶ 9.

The Settling Parties also attended or took twelve fact depositions, including those of four Selling Shareholders; a representative from Defendant; four financial advisors to Symbria or the Selling Shareholders; a representative of Defendant's financial advisor; a representative from the bank that financed the ESOP Transaction; and Plaintiff. After fact discovery closed, the Settling Parties retained and consulted with experts, who prepared reports and analysis on valuation and due diligence issues. The Settling Parties' experts were also deposed.

### C. Motion Practice

During the course of this litigation, the Settling Parties have engaged in extensive motion practice. Defendant filed a Motion to Dismiss Plaintiff's Complaint (Dkt. 32), which was denied (Dkt. 71). Selling Shareholders Krueger and Noesen also filed a separate Motion to Dismiss Plaintiff's Complaint (Dkt. 29), joined by Selling Shareholder Callen (Dkt. 35), which was denied (Dkt. 71). The remaining Selling Shareholders filed a Motion to Dismiss Plaintiff's Complaint (Dkt. 26), which was granted (Dkt. 71). Defendant and the Selling Shareholders filed a Motion to Stay Discovery, which Plaintiff did not oppose but which the Court denied (Dkt. 58, 63). Plaintiff filed a Motion to Compel Responses for Requests for Production (Dkt. 80), which was resolved without a ruling from the Court (Dkt. 85) and was, therefore, denied as moot (Dkt. 86). Plaintiff filed a Motion for Class Certification (Dkt. 102), which was granted (Dkt. 111). Plaintiff filed a Motion for Partial Summary Judgment (Dkt. 139), and Defendant filed a Motion for Summary Judgment (Dkt. 142). The Settling Parties filed a Joint Statement of Undisputed Material Facts (Dkt. 144) in conjunction with these cross motions for summary judgment. Defendant filed a Motion to Strike Plaintiff's Statement of Disputed Material Facts (Dkt. 157), which had been filed by Plaintiff to support Plaintiff's Opposition to Defendant's Motion for Summary Judgment. The Court granted Plaintiff's Motion for Partial Summary Judgment, granted in part and denied in part Defendant's Motion for Summary Judgment, and denied Defendant's Motion to Strike (Dkt. 172).

### D. The Settling Parties' Settlement Efforts

On March 28, 2024, the case was referred to the Honorable Beth W. Jantz for settlement discussions (Dkt. 175). Following a settlement conference pre-call on April 10, 2024, the Settling Parties exchanged a written settlement demand and response (Dkt. 179). The Settling Parties then held *ex parte* calls with Judge Jantz on June 6, 2024 (Dkt. 185) and submitted blind proposed

negotiating brackets to Judge Jantz. The Settling Parties were not able to settle the case at the time and the referral was closed on June 24, 2024 (Dkt. 186). However, following further discussions between the Settling Parties, the referral was re-opened on October 8, 2024, and the case was referred again to Judge Jantz for the purpose of holding a settlement conference (Dkt. 195). Defendant submitted to Judge Jantz a supplement regarding potential *Daubert* issues, and Plaintiff submitted a responsive statement. The Settling Parties agreed to hold a settlement conference on October 28, 2024 (Dkt. 197). At the settlement conference on October 28, 2024, the Settling Parties reached an agreement in principle on the terms of a settlement (Dkt. 198). The Settling Parties then worked together to finalize a term sheet, which was submitted to Judge Jantz on November 4, 2024.

### III. SUMMARY OF THE PROPOSED SETTLEMENT TERMS

The material terms of the Settlement Agreement are summarized below. The proposed Settlement will apply to all participants in the Plan and the beneficiaries of such participants as of the date of the October 31, 2015 ESOP Transaction or anytime thereafter. Excluded from the Class are the shareholders who sold their Symbria stock to the Plan, directly or indirectly, and their immediate families; the directors and officers of Symbria and their immediate families; and legal representatives, successors, and assigns of any such excluded persons.

#### A. Benefits to the Class

Defendant and/or its insurer has agreed to pay $5,900,000 into a Qualified Settlement Fund (the "Gross Settlement Amount"). Settlement Agmt. ¶¶ 5.5–5.6. The funds remaining after deduction from the Gross Settlement Amount of (a) Court-approved Attorneys' fees and Costs; (b) any Class Representative Award as authorized by the Court; (c) all Administrative Expenses; and (d) a contingency reserve for: (i) administrative expenses and (ii) an amount estimated for

adjustments of data or calculation errors shall constitute the "Net Settlement Amount." *Id.* ¶¶ 1.1, 1.23. The Net Settlement Amount will be distributed to the Class Members pursuant to the Plan of Allocation. *Id.* ¶ 6.1; Exhibit 2 to the Settlement Agmt. Each Class Member's share of the Net Settlement Amount shall be equal to the Net Settlement Amount multiplied by the percentage of vested Symbria stock held in the Class Member's Plan account as of December 31, 2024. Plan of Allocation, Exhibit 2 to the Settlement Agmt.

### B. Notice and Administration

The Settlement Administrator, Simpluris, shall be responsible for disseminating the Settlement Notice, issuing notices required by the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1711–1715 ("CAFA"), and establishing a website for case documents. If the Court grants final approval of the Settlement, the Settlement Administrator shall also implement the Plan of Allocation, including effectuating rollover requests by Class Members and mailing checks to other Class Members. The Settlement Administrator shall also serve as Escrow Agent and shall be responsible for establishing and maintaining a Qualified Settlement Fund to hold the Gross Settlement Amount. The Escrow Agent shall invest the assets of the Qualified Settlement Fund pursuant to the agreement with Simpluris and Class Counsel.

### C. Class Representative Award to the Named Plaintiff and Attorneys' Fees and Costs

Subject to Court approval, Class Counsel's fees and costs and a Class Representative Award to the Named Plaintiff shall be paid from the Gross Settlement Amount. Settlement Agmt. ¶¶ 5.12, 7.1, 7.5. Plaintiff shall petition the Court for a Class Representative Award for the named Plaintiff in recognition of her service to the Class. *Id.* ¶ 7.4. Class Counsel will also petition the Court for an award of Attorneys' Fees and Costs not to exceed one-third of the Gross Settlement Amount plus reasonable litigation expenses. *Id.* ¶ 7.1.

### D. Release of Claims

In exchange for payment of the Gross Settlement Amount and satisfaction of the conditions required by the Settlement Agreement, the Class, all Class Members, and Plaintiff will release Defendant and the other Released Parties from, *inter alia*, any claims which arise out of or are in any way related to (a) the allegations, acts, omissions, facts, matters, transactions, or occurrences that were alleged, asserted, or set forth in the Complaint, whether or not included as counts in the Complaint; (b) Defendant's service as trustee for the Plan; and (c) the approval by the Independent Fiduciary of the Settlement Agreement, unless brought against the Independent Fiduciary alone. The Released Parties, Released Claims, and covenant not to sue are set forth in full in the Settlement Agreement. *Id.* ¶¶ 1.29, 1.30, 9.1–9.4.

### E. Notice and Proposed Schedule of Events

The Settlement Agreement provides that the Settling Parties, working together and using cooperative best efforts, will request that Symbria provide, or cause to be provided, information necessary to distribute the Settlement Notice and effect the distribution of funds from the Net Settlement Amount to Class Members, including the names and last known e-mail and/or mailing addresses of the Class Members and the number of vested shares of Symbria stock held in each Class Member's Plan account. Settlement Agmt. ¶ 2.6.

The proposed Settlement Notice (Exhibit 1 to the Settlement Agreement) provides all the information necessary to inform Class Members about the nature of the Class Action, the terms of the Settlement, and the procedures for entering an appearance to be heard or to object to the Settlement. In addition, key court documents, including the Complaint, the Settlement Agreement, preliminary approval papers, Class Counsel's Application for Fees and Costs, Plaintiff's Application for a Class Representative Award, and Plaintiff's Motion for Final Approval will be

posted on the Settlement Website. The Settlement Notice will be mailed by electronic mail (if available) or First-Class mail. For returned mail, the Settlement Administrator will engage in standardized processes to identify and locate Class Members.

The proposed schedule is set forth below:

| Event | Timing |
|-------|--------|
| Motion for Preliminary Approval of Settlement | December 23, 2024 |
| Settlement Administrator serves CAFA Notices | Within ten (10) days after the filing of the Settlement Agreement |
| Settlement Administrator mails Settlement Notice | Within forty-five (45) calendar days after entry of Preliminary Approval Order |
| Plaintiff files Motion for Final Approval of Settlement; applications for Attorneys' Fees; and Costs and Class Representative Award | No later than 45 days prior to the deadline for objections |
| Settlement Administrator files notice with Court confirming compliance with CAFA | At least thirty (30) days prior to the Fairness Hearing |
| Deadline for Objections to the Settlement and notice of intention to appear at Fairness Hearing | At least twenty-one (21) days before the Fairness Hearing |
| Deadline to respond to objections | At least seven (7) days before the Fairness Hearing |
| Fairness Hearing | No sooner than ninety (90) days after entry of the Preliminary Approval Order |

## IV. ARGUMENT

### A. The Court Should Grant Preliminary Approval of the Settlement Because It Is Fair, Reasonable, and Adequate.

Rule 23(e) provides that a class action cannot be settled without court approval and notice to the class. At preliminary approval, the court must determine whether the information provided about the settlement justifies giving notice of the settlement to the class. Rule 23(e)(1); *see also Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982). Thus, at the preliminary approval stage, courts in the Seventh Circuit perform "a more summary version of the final fairness inquiry." *In re TikTok, Inc. Consumer Privacy Litig.*, 565 F. Supp. 3d 1076, 1083 (N.D. Ill. 2021) (internal

citations omitted). "Under Rule 23(e)(2), the court may finally approve a proposed settlement only after a hearing and only on finding that it is fair, reasonable and adequate." *Id.* (citing Rule 23(e)(2)).

Rule 23, as amended in 2018, provides specific direction to federal courts considering whether to grant preliminary approval of a class action settlement and approve the issuance of notice. Fed. R. Civ. P. 23(e), Committee Notes. The factors that provide guidance regarding this determination are as follows:

(A) the class representatives and counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

    (i)    the costs, risks, and delay of trial and appeal;

    (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv)    any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Rule 23(e)(2); *see also In re Tik Tok*, 565 F. Supp. 3d at 1084; *In re Nat'l Collegiate Athletic Assoc. Student-Athlete Concussion Injury Litig.*, 332 F.R.D. 202, 217 (N.D. Ill. 2019).

Prior to the 2018 amendments, the Seventh Circuit traditionally evaluated class action settlements using the six factors outlined in *Wong v. Accretive Heath, Inc.* ("*Wong* factors"):

(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class

to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed.

773 F.3d 859, 863 (7th Cir. 2014); *see also Gautreaux*, 690 F.2d at 631; *In re AT&T Mobility Wireless Data Services Sales Litig.*, 270 F.R.D. 330, 346 (N.D. Ill. 2010). Although some courts within the Seventh Circuit still consider these factors, other courts solely focus on the Rule 23(e)(2) factors and refer to the *Wong* factors as "outdated." *Compare, e.g.*, *Roberts v. Graphic Packaging Int'l, LLC*, No. 3:21-750, 2024 WL 3373780, at *3 (S.D. Ill. July 11, 2024) *with Linman v. Marten Transport, Ltd.*, No. 22-204, 2024 WL 2974831, at *2 n.1 (W.D. Wis. June 13, 2024). In light of this, in addition to the Rule 23(e)(2) factors, Plaintiff will address each of the *Wong* factors to the extent they are applicable, many of which overlap with the Rule 23(e)(2) inquiry.[3]

### 1. The Plan participants are adequately represented, and competent counsel opines that the Settlement is fair.

Rule 23(e)(2)(A) looks to whether the class representatives and class counsel have adequately represented the class. *See Snyder v. Ocwen Loan Servicing, LLC*, No. 14 C 8461, 2019 WL 2103379, at *4 (N.D. Ill. May 14, 2019); *Amchem Products v. Windsor*, 521 U.S. 591, 625–26 (1997) (courts look at whether the representatives' interests are in any way antagonistic to or in conflict with those of the class members). Where, as here, the injuries allegedly suffered by the named Plaintiff are the same as those that the Class is alleged to have suffered, the adequacy requirement is usually satisfied. *See In re AT&T*, 270 F.R.D. at 344.

Plaintiff has proven to be an exemplary class representative, and, in fact, this Court has already found her to be adequate (Dkt. 118). There is no evidence of conflict between Plaintiff and the interests of the Class. Plaintiff has spent significant time on behalf of the Class in this hard-

---

[3] There is no agreement required to be produced under Rule 23(e)(2)(c)(iv) and, since Settlement Notice has not yet been sent, the amount of opposition and the reaction of the Plan participants affected by the Settlement (*Wong* factors #3–4) cannot be evaluated.

fought litigation spanning over three years. Her efforts include responding to Class Counsel requests, regularly communicating with Class Counsel, responding to discovery requests, reviewing documents, and providing deposition testimony and affidavits. *See* Declaration of Carolyn Placht, attached hereto as Exhibit 2, at ¶ 5. If she had not been willing to act as a class representative and prosecute the case on behalf of others similarly situated, there would be no settlement benefits at all for other Class Members. She has no interests that are antagonistic to or in conflict with those of the Class.

In addition, Class Counsel are well-qualified and vigorously prosecuted this Class Action, including engaging in substantial discovery efforts, defeating attempts to dismiss the case, filing or responding to the numerous motions listed above, successfully moving for class certification, and attending the virtual settlement conference. Class Counsel are active class action practitioners whose extensive experience in ERISA law and class action litigation is demonstrated by the declaration attached to Plaintiff's Motion for Class Certification. (Dkt. 104, ¶¶ 6-7). The "adequacy of representation" factor of Rule 23(e)(2)(A) is met. Further, the Court has already ruled that Class Counsel are qualified and experienced in certifying this lawsuit as a class action. (Dkt. 118).

### 2. The negotiations were at arm's length.

In satisfaction of Rule 23(e)(2)(B), the Settling Parties' negotiations were at arm's length, extensive and hard fought, with the assistance of Judge Jantz. *See* Section II(D) above; Porter Decl. ¶ 10. The Settling Parties mediated this matter with Judge Jantz, an experienced mediator. The Settling Parties had several discussions with Judge Jantz beginning in April 2024. Defendant submitted a supplement regarding potential *Daubert* issues, and Plaintiff submitted a responsive statement. Counsel for the Settling Parties attended a settlement conference with Judge Jantz on October 28, 2024. *Id*. The attendees vigorously engaged in the mediation process. After much

11

deliberation, discussion, and compromise, the Settling Parties agreed to resolve the Class Action according to the terms laid out in the Settlement Agreement. *Id*.

### 3. The relief provided to the Plan participants is adequate.

The relief provided to the Class Members is adequate when considering the costs, risks, and delay of trial and appeal; the effectiveness of any proposed method of distributing relief to the Class Members; the terms of any proposed award of attorney's fees; the strength of the case for Plaintiff on the merits balanced against the extent of settlement offer; the complexity, length, and expense of further litigation; and the stage of the proceedings and the amount of discovery completed.

#### a. The Settlement offers a reasonable recovery, given the likelihood of Plaintiff's success on the merits and the potential costs, risks, and delay of trial and appeal.

Here, the litigation would be even more lengthy and expensive if this Class Action were to proceed further. Plaintiff faced significant risks. Plaintiff and Defendant had vastly different views about Defendant's actions, its potential liability, and the likely outcome of the litigation. Plaintiff's core allegations regarding the ESOP Transaction rested on facts that were strongly contested by Defendant, including whether the ESOP Transaction was in the best interest of the Plan, whether the Plan overpaid for Symbria stock, and whether there were negative facts that were ignored or not sufficiently investigated by Defendant during the due diligence and negotiation process.

Defendant vigorously denied all of the allegations, asserted affirmative defenses, and otherwise defended its actions with respect to the ESOP Transaction. Defendant pointed to evidence that in its view supported the conclusion that Defendant had no liability. If the Class Action were to proceed through trial, Plaintiff would have to overcome these defenses and arguments.

Plaintiff and Defendant also strongly disagree on the proper measure of damages. Defendant contends that the Plan and its participants were not harmed at all. Plaintiff, on the other hand, argued that the Plan incurred significant financial damage by overpaying for Symbria stock in the ESOP Transaction. The Settling Parties presented their theories extensively during the summary judgment briefing and mediation processes. That core dispute had not been resolved at the time the Settling Parties reached their Settlement, and the uncertainty put both Settling Parties at significant risk. These fact intensive inquiries related to the fair market value of Symbria and diligence process undertaken by Defendant would have led to a battle of experts and conflicting evidence and testimony, which would have placed the ultimate outcome of the litigation in doubt because no Settling Party could reasonably be certain that its expert or evidence would carry the day.

Before the Settling Parties reached trial, they would have had to expend substantial time and effort to prepare the joint pretrial exhibit list, including identification of relevant exhibits and litigating any motions *in limine*. And, regardless of the outcome at trial, there likely would have been appeals that followed, further delaying final resolution of the Class Action and causing more expense.

In light of the inherent uncertainty, and potential for delay, a settlement of $5,900,000— approximately $5,900 per participant[4] before fees and other costs are applied— is a good result for the affected Class Members. As the Seventh Circuit has noted, "the essence of a settlement is a bilateral exchange," and "[t]he inherent nature of a compromise is to give up certain rights or benefits in return for others." *In re General Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1135 (7th Cir. 1979). "Thus, the parties to a settlement will not be heard to complain that

---

[4] Based on the Plan's Form 5500 for 2022 which listed 986 participants.

the relief afforded is substantially less than what they would have received from a successful resolution after trial." *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985). Here, a certain recovery now for the Class Members far outweighs the mere possibility of future relief after years of costly litigation.

Considering the costs, risks and delay of trial and appeal, the immediate and certain recovery of $5,900,000 outweighs the uncertain possibility of recovering a greater amount in the future, particularly given the amount of time it would take—including trial, post-trial and post-judgment briefing, and appeals—for any judgment to be reduced to actual payment to Class Members.

### b. The Settling Parties and Court possess ample information to evaluate the merits of the competing positions to reach a settlement.

As discussed in Part II(B) above, the Settling Parties completed discovery regarding the facts and claims in this Class Action, including culling and reviewing relevant documents, working with expert consultants, taking and defending depositions, and preparing extensive briefing on numerous issues including summary judgment. As discussed in Part II(C) above, the Settling Parties have engaged in extensive briefing regarding the major issues in the case. Thus, the Settling Parties, as well as the Court, possess the information required to make an informed decision regarding settlement.

### c. The proposed method of distributing relief to Class Members is effective.

Rule 23(e)(2)(C)(ii) examines the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims. Here, the Settlement Agreement contemplates the Settling Parties requesting that Symbria provide, or cause to be provided, information necessary to distribute the Settlement Notice and effect the distribution of funds from the Net Settlement Amount to Class Members, including the names and last known e-

14

mail and/or mailing addresses of the Class Members and the number of vested shares of Symbria stock held in each Class Member's Plan account. Settlement Agmt. ¶ 2.6. The Settlement Administrator will use that information and follow the Plan of Allocation. *Id*. at ¶ 6.1. Class Members with an active Plan account will receive a cash payment into their Plan accounts, which will be deposited into a money market fund in the Plan. Class Members without an active Plan account will receive their distribution by check, unless they submit a completed Election Form at least 21 days before the Fairness Hearing wherein they request that their distribution is deposited directly into an individual retirement account or other eligible retirement plan .

### d. The relief is adequate when considering the terms of the proposed award of attorneys' fees.

Rule 23(e)(2)(C)(iii) looks at the terms of any proposed award of attorneys' fees, including timing of payment. As described above in Section III(C), Class Counsel will file an application seeking an award of Attorneys' Fees and Costs in an amount not to exceed one-third of the Gross Settlement Amount plus reasonable litigation expenses. Settlement Agmt. ¶ 7.1.

### 4. The proposal treats Class Members equitably relative to each other.

As described in Section III(B) above, the Settling Parties have agreed, subject to Court approval, to a Settlement Notice plan, which calls for individual mailed notice to Class Members. This notice and the manner in which it will be disseminated satisfies Rule 23(e)(1) and the Due Process Clause of the United States Constitution.

Plaintiff requests that the Court approve Simpluris as Settlement Administrator and Escrow Agent. Simpluris has extensive experience in the administration of settlements of this type. *See* Exhibit B to the Porter Decl., summary of Simpluris' experience.

Finally, the Settling Parties request that the Court schedule a Fairness Hearing on Plaintiff's motion for final approval of the Settlement and Applications for Attorneys' Fees and Costs and a

Class Representative Award to Plaintiff, as set forth in the proposed Preliminary Approval Order. This will establish a reasonable and efficient process for disseminating notice, providing the opportunity for Class Members to object, and considering final approval of the Settlement.

## V. CONCLUSION

The proposed settlement meets the standard for preliminary approval. Accordingly, Plaintiff respectfully requests that the Court issue an Order: (a) granting preliminary approval of the Settlement Agreement; (b) approving the proposed Settlement Notice; (c) appointing Simpluris as the Settlement Administrator and Escrow Agent; (d) approving the Plan of Allocation; and (e) setting a date for a Fairness Hearing.

Dated: December 23, 2024                    Respectfully submitted,

**BAILEY & GLASSER LLP**

*/s/ Patrick O. Muench*
Patrick O. Muench
318 W. Adams St., Ste. 1512
Chicago, IL 60606
Telephone: (312) 500-8680
Facsimile: (304) 342-1110
pmuench@baileyglasser.com

Gregory Y. Porter (*pro hac vice*)
Ryan T. Jenny
Laura Babiak (*pro hac vice*)
1055 Thomas Jefferson St., NW, Ste. 540
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103
gporter@baileyglasser.com
rjenny@baileyglasser.com
lbabiak@baileyglasser.com

*Attorneys for Plaintiff*

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 23rd day of December 2024, a copy of the foregoing document was served on all counsel of record via ECF.

*/s/ Patrick O. Muench*
Patrick O. Muench
